In the

# United States Court of Appeals

## For the Seventh Circuit

_____

No. 17-1061

JOSHUA VASQUEZ and
MIGUEL CARDONA,

*Plaintiffs-Appellants*,

*v.*

KIMBERLY M. FOXX, in her official
capacity as the State's Attorney of
Cook County, and CITY OF CHICAGO,

*Defendants-Appellees*.

_____

Appeal from the United States District Court for
the Northern District of Illinois, Eastern Division.
No. 16-cv-8854 — **Amy J. St. Eve**, *Judge*.

_____

ARGUED NOVEMBER 28, 2017 — DECIDED JULY 11, 2018

_____

Before BAUER, ROVNER, and SYKES, *Circuit Judges*.

SYKES, *Circuit Judge*. Joshua Vasquez and Miguel Cardona are convicted child sex offenders who live in Chicago and are required to register as sex offenders and comply with state restrictions on where they may live. For example, a child sex offender may not knowingly live within 500 feet of

a school, playground, or child-care center. 720 ILL. COMP. STAT. 5/11-9.3(b-5), (b-10). A few years after Vasquez and Cardona were convicted, Illinois added child day-care homes and group day-care homes to the list of places included in the 500-foot residential buffer zone. § 5/11-9.3(b-10). When Vasquez and Cardona updated their sex-offender registrations in August 2016, the Chicago Police Department told them they had to move because child day-care homes had opened up within 500 feet of their residences. The Department gave them 30 days to come into compliance with the statute.

Vasquez and Cardona sued the City of Chicago and Kimberly M. Foxx, the Cook County State's Attorney,[1] seeking relief under 42 U.S.C. § 1983 based on four alleged constitutional violations. First, they claimed that the amendment to the residency statute imposes retroactive punishment in violation of the Ex Post Facto Clause. Next, they alleged that applying the amended statute to them amounted to an unconstitutional taking of their property in violation of the Fifth Amendment's Takings Clause. Finally, they asserted two due-process claims, one procedural and one substantive: they complained that the statute is enforced without a hearing for an individualized risk assessment and is not rationally related to a legitimate state interest.

The district judge rejected each claim at the pleadings stage and we affirm. Under Supreme Court and circuit precedent, the amended statute is neither impermissibly

---

[1] Anita Alvarez was the Cook County State's Attorney when the suit was filed. Foxx replaced her in that office on December 1, 2016, and was substituted as a defendant. *See* FED. R. CIV. P. 25(d).

retroactive nor punitive, so it raises no ex post facto concerns. The plaintiffs' claim under the Takings Clause fails for two independent reasons: it is unexhausted and the amendment was adopted before they acquired their homes, so it did not alter their property-rights expectations. The procedural due-process claim is a nonstarter for the straightforward reason that there is no right to a hearing to establish a fact not material to the statute. And the law is not unconstitutional in substance: it easily satisfies rational-basis review.

## I. Background

Illinois first adopted residency restrictions for child sex offenders in 2000. Act of July 7, 2000, Pub. Act No. 91-911, 2000 Ill. Laws 2051. As originally enacted the law prohibited child sex offenders from knowingly residing within 500 feet of a "playground or a facility providing programs or services exclusively directed toward persons under 18 years of age." *Id.* In subsequent years the Illinois legislature amended the statute to add other places to the list. At issue here is a 2008 amendment prohibiting child sex offenders from knowingly residing within 500 feet of a "day care home" or "group day care home." Act of Aug. 14, 2008, Pub. Act No. 95-821, 2008 Ill. Laws 1383. Noncompliance is a Class 4 felony punishable by up to three years in prison. 720 ILL. COMP. STAT. 5/11-9.3(f); 730 ILL. COMP. STAT. 5/5-4.5-45(a).

Plaintiff Joshua Vasquez was convicted of child-pornography possession in 2001 and must register as a sex offender for the rest of his life. His conviction also makes him a child sex offender within the meaning of the residency statute. 720 ILL. COMP. STAT. § 5/11-9.3(d)(1). On August 25, 2016, Vasquez visited the Chicago Police Department headquarters to complete his annual sex-offender registration. As

of that date, he had lived in his Chicago apartment for three years with his wife and daughter, and his lease continued through August 19, 2017. The Department notified him that a child day-care home had opened 480 feet from his apartment and told him he had to move within 30 days. Vasquez alleges that he has been unable to find suitable and affordable housing that complies with the residency requirements. He also alleges that his daughter's schooling will be disrupted if the family has to move outside the school district.

Plaintiff Miguel Cardona was convicted of indecent solicitation of a child in 2004.[2] Like Vasquez, Cardona's conviction makes him a child sex offender subject to the requirements of the residency statute. *Id.* Cardona has lived in his Chicago home for roughly 25 years, but he did not purchase it until 2010 so he cannot claim an exemption for offenders who owned their homes prior to the enactment of the 2008 amendment. § 5/11-9.3(b-10). When Cardona completed his annual sex-offender registration on August 17, 2016, the Chicago Police Department notified him that a child day-care home had opened 475 feet from his residence. Like Vasquez, he was given 30 days to move. Cardona alleges that he cannot afford to move into compliant housing. He also alleges that the day-care home in question has been open since 2014 and his proximity to it has caused no problems.

Vasquez and Cardona challenge the 2008 amendment facially and as applied to them. They sued the City of Chicago

---

[2] The complaint alleges that Cardona's conviction requires him to register as a sex offender through 2017. Although his registration duty has expired, he remains subject to the residency restrictions.

and State's Attorney Foxx seeking declaratory and injunctive relief under § 1983 for violation of the Ex Post Facto Clause, the Fifth Amendment's Takings Cause, and the Fourteenth Amendment's Due Process Clause. The judge entered an order enjoining the defendants from forcing the plaintiffs to vacate their homes or otherwise enforcing the amended statute against them while the case was pending.

The defendants moved to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, and the judge granted the motion. She held that the 2008 amendment created only prospective legal obligations and thus raised no concerns under the Ex Post Facto Clause. On the takings claim she concluded that the plaintiffs had not suffered an unconstitutional taking of their property under the test announced in *Penn Central Transportation Co. v. City of New York*, 438 U.S. 104 (1978). Finally, the judge ruled that the complaint failed to state a procedural or substantive due-process claim because there is no right to a hearing to establish a fact not material under the statute and the challenged residency restriction is a rational means of protecting children from convicted child sex offenders.

Vasquez and Cardona appealed, and the judge granted their motion to extend her order maintaining the status quo through the pendency of the appeal. In the meantime Vasquez renewed his lease, and Cardona lives in the same home.

## II. Discussion

We review the judge's dismissal order de novo. *Roberts v. City of Chicago*, 817 F.3d 561, 564 (7th Cir. 2016). Before taking up the merits of the plaintiffs' constitutional claims, we note

that the City is not a proper defendant on any of them, at least not as the claims were pleaded. A municipality is subject to § 1983 liability only if one of its policies caused the constitutional injury. *Swanigan v. City of Chicago*, 881 F.3d 577, 582 (7th Cir. 2018) (citing *Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658 (1978)). The "official policy" analysis isolates ultimate responsibility for a claimed constitutional violation, distinguishing the acts of a municipality from the acts of its employees. *Estate of Sims ex rel. Sims v. County of Bureau*, 506 F.3d 509, 515 (7th Cir. 2007). A municipality's enforcement of a state law does not constitute an actionable official policy. *See Surplus Store & Exchange, Inc. v. City of Delphi*, 928 F.2d 788, 791 (7th Cir. 1991) ("It is difficult to imagine a municipal policy more innocuous and constitutionally permissible, and whose causal connection to the alleged violation is more attenuated, than the 'policy' of enforcing state law.").

The City's police department did not enforce a Chicago ordinance or other municipal policy; rather, this suit challenges a state law. The City can be held liable only if it has "as a matter [of] policy or custom, enforce[d] the law in a manner or method that caused the constitutional violation." *Id.* Vasquez and Cardona contend that the City exercises discretion in enforcing the residency statute—for example, by checking for compliance annually when sex offenders register and by giving sex offenders 30 days' notice to move. But the complaint does not allege a causal connection between the City's compliance monitoring and the plaintiffs' constitutional injury. *Id.* at 790. The plaintiffs do face a continuing threat of prosecution if they fail to comply with the 2008 amendment, but the State's Attorney is the proper defendant to sue for redress of that injury. For this inde-

pendent reason, which the City preserved below but the judge did not need to address, the plaintiffs failed to state a claim against the City.

## A. Ex Post Facto Clause

The Ex Post Facto Clause[3] forbids retroactive punishment—that is, "the imposition of punishment more severe than the punishment assigned by law when the act to be punished occurred." *Weaver v. Graham*, 450 U.S. 24, 30 (1981). So a statute is not an impermissible ex post facto law unless it is *both* retroactive *and* penal. *United States v. Leach*, 639 F.3d 769, 773 (7th Cir. 2011).

Our decision in *Leach* is conclusive on the retroactivity question. There we considered an ex post facto challenge to the federal Sex Offender Registration and Notification Act ("SORNA"). *Id.* at 770–71. Enacted in 2006, SORNA requires all convicted sex offenders—including those who were convicted before the Act was adopted—to register in each jurisdiction where they live, work, or attend school; the Act also imposes criminal penalties for failure to register or update a registration following interstate travel. *Id.* at 771 (citing 42 U.S.C. § 16913(a) and 18 U.S.C. § 2250(a)). Donald Leach was convicted of child molestation in 1990, long before SORNA came into being, and he was charged with failing to update his registration when he moved to another state. He argued that SORNA could not be applied to him because it retroactively increased his punishment in violation of the Ex Post Facto Clause.

---

[3] "No … ex post facto Law shall be passed." U.S. CONST. art. I, § 9, cl. 3.

We rejected that argument and affirmed Leach's conviction. We began by noting that SORNA's registration duty and the criminal penalty for failure to comply are plainly *prospective* in operation. In other words, the new regulatory scheme applies only to conduct occurring *after* the law's enactment—that is, a sex offender's failure to register or update his registration following interstate travel. Accordingly, we held that SORNA "merely creates new, prospective legal obligations based on the person's prior history." *Id.* at 773.

So too here. Although the 2008 amendment to the Illinois residency statute applies to Vasquez, Cardona, and others like them who were convicted of child sex offenses before the amendment was adopted, its requirements and any criminal penalty apply only to conduct occurring *after* its enactment—i.e., knowingly maintaining a residence within 500 feet of a child day-care home or group day-care home.

We also held in *Leach* that under *Smith v. Doe*, 538 U.S. 84 (2003), SORNA's registration regime for sex offenders is not penal in nature. *Id. Smith* upheld Alaska's sex-offender registration statute against an ex post facto challenge. The Court found that the Alaska registration regime was a nonpunitive civil regulatory scheme and thus raised no ex post facto concerns. 538 U.S. at 105–06. Because SORNA is indistinguishable from the Alaska statute upheld in *Smith*, we concluded in *Leach* that the federal law is likewise a civil regulatory scheme and not a penal statute. 639 F.3d at 773.

Again, the same is true here. The Illinois residency statute is similar enough to the sex-offender registration statutes at issue in *Smith* and *Leach* that it's safe to apply those holdings and reject the plaintiffs' challenge without further ado.

If more is needed, we briefly address the two-step frame-work the Court used in *Smith* and explain why the Illinois residency statute is not punitive under that test.

The Court's framework asks if the legislature intended to impose punishment, and if not, whether the civil regulatory scheme is "so punitive either in purpose or effect as to negate" the legislature's nonpunitive intent. *Smith*, 538 U.S. at 92 (quotation marks omitted). Vasquez and Cardona do not argue that the Illinois legislature intended to impose additional punishment, so we skip directly to the second step. To determine if Alaska's registration law was punitive in effect, the Court examined several factors: whether the regulatory regime "in its necessary operation … [would be] regarded in our history and traditions as a punishment[,] imposes an affirmative disability or restraint[,] promotes the traditional aims of punishment[,] has a rational connection to a nonpunitive purpose[,] or is excessive with respect to this purpose." *Id.* at 97. The Court assigned no particular priority or weight to any of these factors: they are "neither exhaustive nor dispositive" but merely "relevant." *Id.*

As for the first factor, Vasquez and Cardona compare the Illinois residency restrictions to the historical punishments of shaming and banishment. As the Court noted in *Smith*, however, early shaming punishments "inflict[ed] public disgrace," and "[t]he aim was to make these offenders suffer permanent stigmas, which in effect cast the person out of the community." *Id.* at 97–98 (internal quotation marks omitted). The Alaska registration requirement did not shame child sex offenders in this way, *id.*, and neither do the Illinois residency restrictions. Nor do the residency restrictions resemble banishment. Under that early form of punishment, "[t]he

most serious offenders … could neither return to their original community nor, reputation tarnished, be admitted easily into a new one." *Id.* (citing THOMAS G. BLOMBERG & KAROL LUCKEN, AMERICAN PENOLOGY: A HISTORY OF CONTROL 30–31 (2000)). The Illinois residency statute merely keeps child sex offenders from living in very close proximity to places where children are likely to congregate; it does not force them to leave their communities.

Vasquez and Cardona also compare the residency re-strictions to criminal punishments such as probation and supervised release. The comparison is inapt; the Court rejected it in *Smith*, noting that "offenders subject to the Alaska statute are free to move where they wish and to live and work as other citizens[] with no supervision." *Id.* at 101. Although the Illinois residency restrictions limit where sex offenders may live, the statute does not control any other aspect of their lives and thus does not resemble the compre-hensive control of probation and supervised release.

The Court also examined the extent to which the Alaska law imposed an affirmative disability or restraint on sex offenders, observing that "[i]f the disability or restraint is minor and indirect, its effects are unlikely to be punitive." *Id.* at 100. We accept for present purposes that Vasquez and Cardona have had difficulty finding suitable compliant housing in their neighborhoods. We also recognize that including child day-care homes within the 500-foot buffer zone creates some unpredictability: schools and playgrounds are typically known and fixed, but a private residential property can become a day-care home without anyone in the neighborhood noticing. However, like the registration scheme at issue in *Smith*, the residency law "imposes no

physical restraint[] and so does not resemble the punishment of imprisonment, which is the paradigmatic affirmative disability or restraint." *Id.*

Another relevant factor in the *Smith* framework is whether the statute promotes the traditional aims of punishment, but the Court strictly limited the scope of this inquiry, asking only whether the law is retributive. 538 U.S. at 102. Vasquez and Cardona do not develop an argument on this point, perhaps because the residency restrictions are so clearly *not* retributive. As in *Smith*, the obvious aim of the statute is to protect children from the danger of recidivism by convicted child sex offenders. *Id.*

The last two factors in the *Smith* framework are related: the Court asked whether the Alaska statute was rationally connected to a nonpunitive purpose and whether its requirements were excessive with respect to that purpose. *Id.* at 103. At this step of the analysis, the challenger is required to show that the statute's "nonpunitive purpose is a sham or mere pretext." *Id.* (internal quotation marks omitted). Vasquez and Cardona maintain that sex offenders do not reoffend more than other criminals. Even if we accept that assertion, similar recidivism rates across different categories of crime would not establish that the nonpunitive aim of this statute—protecting children—is a sham. Indeed, *Smith* holds that states may make "reasonable categorical judgments … without any corresponding risk assessment." *Id.* at 103–04.

In short, under *Smith* and *Leach*, the 2008 amendment to the sex-offender residency statute is neither retroactive nor

punitive and thus raises no ex post facto concerns.[4] The judge was right to dismiss this claim.

## B. Takings Clause

Next, Vasquez and Cardona argue that the judge wrongly dismissed their claim that the 2008 amendment effectively "takes" their property without just compensation in violation of the Fifth Amendment's Takings Clause. But neither plaintiff pursued state remedies prior to filing this suit, and current law requires exhaustion of state mechanisms for obtaining compensation before a takings claim can be brought in federal court. *Williamson Cnty. Reg'l Planning Comm'n v. Hamilton Bank of Johnson City*, 473 U.S. 172, 194 (1985).[5]

---

[4] Vasquez and Cardona rely heavily on the Sixth Circuit's decision in *Does #1-5 v. Snyder*, 834 F.3d 696 (6th Cir. 2016), but that case is easily distinguishable. The plaintiffs there challenged a series of amendments to the Michigan sex-offender registration law, which the court characterized as imposing "a byzantine code governing in minute detail the lives of the state's sex offenders." *Id*. at 697. The challenged provisions included a residency restriction prohibiting sex offenders from "living, working, or 'loitering' within 1,000 feet of a school." *Id.* at 698. The plaintiffs also challenged a provision publicly classifying registrants "into three tiers, which ostensibly correlate to current dangerousness, but which are based[] not on individual assessments, but solely on the crime of conviction." *Id.* Finally, the plaintiffs challenged a provision requiring registrants to "appear in person 'immediately' to update information such as new vehicles or 'internet identifiers.'" *Id.* The court considered these provisions collectively and concluded that this package of civil regulatory restrictions were punitive in effect. *Id.* at 702–06. The single 2008 amendment at issue in this case does not remotely compare.

[5] *Williamson County* has been criticized, and the Supreme Court may revisit and overrule it next term. *Knick v. Township of Scott*, 862 F.3d 310

To exhaust a takings claim, the plaintiff must seek relief in state court unless doing so would be "futile." *Peters v. Village of Clifton*, 498 F.3d 727, 732 (7th Cir. 2007). Relying on *Callahan v. City of Chicago*, 813 F.3d 658 (7th Cir. 2016), the judge assumed that the Illinois state courts could not provide relief for this claim. In *Callahan*, however, we accepted Chicago's concession that a suit for relief on a takings claim in an Illinois state court would be futile. *Id.* at 660. Foxx has not made a similar concession here. And as we explained in *Sorrentino v. Godinez*, 777 F.3d 410, 413 (7th Cir. 2015), the Illinois Court of Claims can provide damages for a regulatory taking. By failing to seek damages in state court, the plaintiffs have not exhausted their challenge to the residency requirements.[6]

Even if we looked past this procedural barrier, the takings claim would fail on the merits. Under the Supreme Court's *Penn Central* test, we're instructed to examine "(1) the nature of the government action, (2) the severity of [its] economic impact on the [property] owner, and (3) the degree

---

(3d Cir. 2017), *cert. granted*, 138 S. Ct. 1262 (Mem.) (2018). For now it remains good law.

[6] Vasquez and Cardona argue that if they cannot proceed on an as-applied takings claim, they should be permitted to raise a facial takings claim. This argument is based on a line of caselaw holding that a facial takings challenge need not meet the *Williamson County* exhaustion requirement. *Peters v. Village of Clifton*, 498 F.3d 727, 732 (7th Cir. 2007). But Vasquez and Cardona did not develop an argument that the 2008 amendment is facially unconstitutional under the Takings Clause. The issue is therefore waived. *See Judge v. Quinn*, 612 F.3d 537, 557 (7th Cir. 2010).

of interference with the owner's reasonable investment-backed expectations." *Bettendorf v. St. Croix County*, 631 F.3d 421, 430 (7th Cir. 2011) (internal quotation marks omitted). On the first of these factors, a taking "may more readily be found when the interference with property can be characterized as a physical invasion by government than when interference arises from some public program adjusting the benefits and burdens of economic life to promote the common good." *Penn Central*, 438 U.S. at 124 (citation omitted). Although the Illinois law restricts a child sex offender's use of his property, it cannot be characterized as a physical invasion. The law merely adjusts the benefits and burdens of economic life.

Moving on to the economic impact of the 2008 amendment, we keep in mind that a regulation does not amount to a taking simply because the property owner can no longer make the "most beneficial use of the property." *Id.* at 125. Even the denial of a traditional property right does not necessarily amount to a taking. For example, in *Andrus v. Allard*, 444 U.S. 51, 65–66 (1979), the Supreme Court held that a law preventing the sale of certain artifacts did not amount to a taking of property within the meaning of the Fifth Amendment. The Court emphasized that the regulation did not compel the surrender of the artifacts and that the owners could still derive some economic benefit by "exhibit[ing] the artifacts for an admissions charge." *Id.* at 66. The economic impact of the 2008 amendment to the Illinois residency statute is minimal in comparison to *Andrus*. Although Vasquez and Cardona cannot reside within the 500-foot buffer zone, there is no question that many others can, leaving open a broad market to sell or sublease their residences at full market value.

The third factor in the *Penn Central* analysis seals the fate of the plaintiffs' takings claims. We're instructed to look at their "expectation concerning the use of the parcel" and whether they can obtain a "reasonable return" on their investment. *Penn Central*, 438 U.S. at 136. Vasquez and Cardona assert that they had no reasonable expectation they would have to move. They rely on *Mann v. Georgia Department of Corrections*, 653 S.E.2d 740 (Ga. 2007), which held that a sex-offender residency statute "positively precludes appellant from having any reasonable investment-backed expectation in any property purchased as his private residence." *Id.* at 744. But *Penn Central* simply does not support this expansive understanding of a property owner's investment-backed expectations.

A properly focused inquiry looks to the effect of the 2008 amendment on the plaintiffs' property-rights expectations. And because the amendment was on the books when Cardona purchased his home and Vasquez leased his apartment, its terms were necessarily part of any property-rights expectations they could have held. That's enough to doom this takings claim on the merits. *See, e.g.*, *Goodpaster v. City of Indianapolis*, 736 F.3d 1060, 1074 (7th Cir. 2013) (holding that the bar owners' reasonable expectations included the expansion of the smoking ban); *Rancho de Calistoga v. City of Calistoga*, 800 F.3d 1083, 1091 (9th Cir. 2015) ("[T]hose who buy into a regulated field … cannot object when regulation is later imposed.").

## C. Procedural Due Process

The procedural aspect of the due-process claim rests on the plaintiffs' allegation that the 2008 amendment is unconstitutionally enforced against them without a hearing or

other procedure to determine whether they actually pose a continued threat to children. This claim is squarely foreclosed by *Connecticut Department of Public Safety v. Doe*, 538 U.S. 1 (2003). There the Supreme Court considered whether a sex-offender registration statute required a determination that the offender was currently dangerous. *Id.* at 4. The answer was "no." The Court reasoned that "due process does not require the opportunity to prove a fact that is not material to the State's statutory scheme." *Id.*; *see also id.* at 8 (Scalia, J., concurring) ("[A] validly enacted statute suffices to provide all the process that is 'due … .'"); *Bi-Metallic Inv. Co. v. State Bd. of Equalization*, 239 U.S. 441, 445 (1915) ("General statutes within the state power are passed that affect the person or property of individuals, sometimes to the point of ruin, without giving them a chance to be heard."). The Illinois statute places residency restrictions on *all* child sex offenders regardless of their individual risk of recidivism. Vasquez and Cardona are not entitled to a hearing for an individualized risk assessment.

### D. Substantive Due Process

Finally, Vasquez and Cardona argue that the 2008 amendment to the residency statute is substantively unconstitutional. They urge us to apply heightened scrutiny, claiming that the residency requirements were enacted out of pure animus toward child sex offenders, a politically unpopular group. *See, e.g., United States v. Windsor*, 570 U.S. 744, 770 (2013); *U.S. Dep't of Agric. v. Moreno*, 413 U.S. 528, 556–58 (1973). Heightened scrutiny does not apply. The residency statute is facially neutral and advances a compelling governmental interest: protecting children from recidivism by child sex offenders. The plaintiffs also press for

heightened scrutiny because the statute infringes their fundamental right to "establish a home." *See Washington v. Glucksberg*, 521 U.S. 702, 761 (1997). This argument is meritless. A law limiting where sex offenders may live does not prevent them from establishing a home; it just constrains where they can do so.

This law triggers only rational-basis review, so we ask whether its intrusion upon liberty is rationally related to a legitimate governmental interest. *Hayden ex rel. A.H. v. Greensburg Cmty. Sch. Corp.*, 743 F.3d 569, 576 (7th Cir. 2014). No one questions that protecting children from child sex offenders is a legitimate governmental interest; indeed, it is a compelling interest. *See Doe v. City of Lafayette*, 377 F.3d 757, 773 (7th Cir. 2004) (holding that the City's interest in protecting minors from child sex offenders is "not merely legitimate, it is compelling"). The plaintiffs thus "have the burden to negate every conceivable basis [that] might support [the statute]." *Goodpaster*, 736 F.3d at 1071 (internal quotation marks omitted).

It's self-evident that creating a buffer between a child day-care home and the home of a child sex offender may protect at least some children from harm. Indeed, as the Supreme Court explained in *Smith*, a state legislature "could conclude that a conviction for a sex offense provides evidence of substantial risk of recidivism." 538 U.S. at 103. Vasquez and Cardona insist that "scant evidence" supports the public-safety rationale of this statute; they also argue that the harsh burdens placed on sex offenders are highly disproportionate to any benefit. But our role is not to second-guess the legislative policy judgment by parsing the latest academic studies on sex-offender recidivism. *See Goodpaster*,

736 F.3d at 1071 ("Under rational basis review, a state law is constitutional even if it is unwise, improvident, or out of harmony with a particular school of thought.") (internal quotation marks omitted). This residency restriction on child sex offenders cannot be called irrational.

AFFIRMED.