**NONPRECEDENTIAL DISPOSITION**

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted April 17, 2019
Decided April 19, 2019

**Before**

MICHAEL S. KANNE, *Circuit Judge*

DAVID F. HAMILTON, *Circuit Judge*

AMY J. ST. EVE, *Circuit Judge*

No. 18-2764

| | |
|---|---|
| UNITED STATES OF AMERICA, *Plaintiff-Appellee*, | Appeal from the United States District Court for the Southern District of Illinois. |
| *v.* | No. 4:03-CR-40059-DRH-1 |
| JAMES A. COOPER, *Defendant-Appellant*. | David R. Herndon, *Judge*. |

**O R D E R**

While on supervised release for federal drug offenses, James Cooper, a convicted child sex offender, moved into a home within 500 feet of a playground and daycare. His probation officer instructed him to move because an Illinois statute prohibits child sex offenders from living in that area. *See* 720 ILCS 5/11-9.3(b-10). When Cooper refused, the district court revoked his supervised release and sentenced him to twelve months in prison. Cooper appealed, arguing that the Illinois residency-restriction law violates the Ex Post Facto Clause, and that his prison sentence was unreasonable. Cooper has since been released from prison, prompting the government to move to dismiss his appeal. Because Cooper has fully discharged his federal sentence, we grant the government's motion, dismiss the appeal as moot, and vacate oral argument.

**I**

In 2005, a federal jury found James Cooper guilty of multiple drug offenses and unlawful possession of a firearm. The district court sentenced him to concurrent terms of imprisonment totaling 285 months followed by 5 years' supervised release. His sentence was later reduced to 146 months in prison based on retroactive guideline changes. *See* 18 U.S.C. § 3582(c)(2).

Shortly before Cooper's release from prison, his probation officer told him that, as a convicted child sex offender, he could not move in with his parents because of the location of their home (within 500 feet of a playground and daycare facility). *See* 720 ILCS 5/11-9.3(b-10) (prohibiting child sex offenders from living in certain areas). Cooper previously had lived with his parents; during the ten-year registration period following his 1992 sex-offense conviction, he had registered at their address at least twice (in 2001 and 2002). Although he no longer is required to register, Cooper still must comply with child-sex-offender residency restrictions.

Cooper failed to line up alternative housing before his period of supervision began in November 2015. So the probation office paid for Cooper to stay at a motel until he found an acceptable place to live, which he did the following month. At a home visit shortly thereafter, Cooper's probation officer reminded him that he could not stay at his parent's house.

In August 2017, Cooper's supervision was transferred to a new probation officer, Sheryll Vilcinskas, who was unaware of Cooper's status as a child sex offender and his residency restrictions. As a result, when Cooper submitted a change-of-address notice indicating that he would be moving in with his parents in October 2017, Vilcinskas did not object. Instead, she completed a walk-through of the residence and determined that it was appropriate for Cooper to live there. Cooper moved into his parent's home in late October.

In January 2018, Vilcinskas finally learned that Cooper was a convicted child sex offender and was residing in a restricted area. At a meeting on January 8, she told Cooper that he had 48 hours to move. As Vilcinskas later testified, Cooper "brought up ex post facto a few times" at their meeting and said that "he didn't feel like he needed to move as he was able to register at that address previously." Cooper did not move.

In March 2018, the probation office petitioned to revoke Cooper's supervised release, alleging that he had violated the conditions of his release by (1) committing another crime; (2) filing two late monthly reports; (3) failing to follow his probation officer's instructions; and (4) failing to make himself available for a probation home visit. Regarding the first violation, Vilcinskas stated (in an amended petition) that, between October 23, 2017, and March 26, 2018, Cooper knowingly resided within 500 feet of a playground and/or daycare, in violation of Illinois law, 720 ILCS 5/11-9.3(b-10).

In a memorandum filed before the revocation hearing, defense counsel argued that the Illinois residency statute, enacted in 2000, violates the Ex Post Facto Clause of the United States Constitution because it imposes retroactive punishment based on an earlier conviction. A few weeks later, this court rejected an identical argument in *Vasquez v. Foxx*, 895 F.3d 515 (7th Cir. 2018), holding that 720 ILCS 5/11-9.3(b-10) does not implicate the Ex Post Facto Clause. *See* 895 F.3d at 520–22.

At the revocation hearing in August 2018, the district court concluded that "all four allegations in the [probation office's] petition have been proven by the evidence," and thus, revocation of Carter's supervised release was warranted. (Regarding the residency-law violation, defense counsel conceded that *Vasquez* was dispositive but raised the constitutional argument to preserve it.) The court imposed a twelve-month prison term with no supervision to follow.

## II

In his appellate brief, filed October 2018, Cooper challenges (1) the revocation of his supervised release based on a violation of 720 ILCS 5/11-9.3(b-10), maintaining that the Illinois residency restrictions violate the Ex Post Facto Clause; and (2) the reasonableness of his twelve-month prison sentence.

Five months later, on March 25, 2019, Cooper completed his one-year prison term and was released from federal custody.

On April 8, 2019, the government moved to dismiss the appeal as moot, arguing that because Cooper has fully discharged his sentence, the appeal no longer can provide him any relief.

In his response, Cooper concedes that his sentencing argument is now moot but contends that his Ex Post Facto challenge to the Illinois residency statute is not. He

argues that he "stands to gain a potential benefit from success on appeal" because "Illinois courts would likely follow this Court's holding regarding the constitutionality of that law, which would relieve [him] from the burden of complying with the residency restrictions." Cooper acknowledges the force of *Vasquez*'s holding but says that he "desires to exercise his right to preserve the claim for further review."

However, Cooper's appeal no longer presents a case or controversy under Article III, § 2 of the Constitution and must be dismissed as moot. Once a criminal justice sentence has expired, "some concrete and continuing injury other than the now-ended incarceration or parole … must exist if the suit is to be maintained." *Spencer v. Kemna*, 523 U.S. 1, 7 (1998); *see also United States v. Juvenile Male*, 564 U.S. 932, 936 (2011). Here, Cooper has completed the prison term imposed following revocation of his supervised release, and he has not identified any ongoing collateral consequence stemming from the revocation. Because the district court did not impose another term of supervised release to follow, Cooper would have "nothing to gain from an appeal." *United States v. Trotter*, 270 F.3d 1150, 1153 (7th Cir. 2001); *see also Pope v. Perdue*, 889 F.3d 410, 414 (7th Cir.), *reh'g denied* (July 30, 2018). He identifies only a speculative "potential benefit"— the persuasive value of a favorable decision in this court for future Illinois state-court proceedings—but, as the Supreme Court has recognized, a "possible, indirect benefit in a future lawsuit" cannot save a case from mootness. *Juvenile Male*, 564 U.S. at 937.

For these reasons, we GRANT the government's motion to dismiss, DISMISS the appeal as moot, and VACATE the previously scheduled oral argument in this case.