**2024 IL 127464**

# IN THE

# SUPREME COURT

# OF

# THE STATE OF ILLINOIS

(Docket Nos. 127464, 127487)

MARTIN KOPF, Appellee and Cross-Appellant, v. BRENDAN KELLY, in his Official Capacity as Director of the Illinois State Police, *et al.*, Appellants and Cross-Appellees.

*Opinion filed March 21, 2024.*

JUSTICE OVERSTREET delivered the judgment of the court, with opinion.

Chief Justice Theis and Justices Holder White, Cunningham, Rochford, and O'Brien concurred in the judgment and opinion.

Justice Neville took no part in the decision.

## OPINION

¶ 1    The instant action involves a direct appeal by defendants, Brendan Kelly, in his official capacity as Director of the Illinois State Police (ISP); Kwame Raoul, in his official capacity as Illinois Attorney General; and Jamie L. Mosser, in her official capacity as Kane County State's Attorney, from an order of the circuit court of

Kane County finding an Illinois statutory provision unconstitutional. See Ill. S. Ct. R. 302(a)(1) (eff. Oct. 4, 2011).

¶ 2 Plaintiff, Martin Kopf, filed a *pro se* complaint in the circuit court alleging that section 11-9.3(b-10) of the Criminal Code of 2012 (Criminal Code) (hereinafter Residency Restriction) (720 ILCS 5/11-9.3(b-10) (West 2018)), which prohibits "child sex offender[s]" from living within 500 feet of a "day care home," along with other prohibitions and requirements for sex offenders in Illinois, was unconstitutional. Although the circuit court dismissed most of plaintiff's claims, it held that the Residency Restriction violates "substantive due process and equal protection." Plaintiff cross-appealed to argue that the circuit court erred in dismissing his *ex post facto*, procedural due process, and remaining substantive due process claims. For the following reasons, we hereby vacate and remand the portion of the circuit court's order finding the Residency Restriction unconstitutional as applied to plaintiff, reverse the portion of the circuit court's order finding the Residency Restriction facially unconstitutional, and affirm the portion of the circuit court's order dismissing the plaintiff's remaining claims.

¶ 3                                I. BACKGROUND

¶ 4 In 2003, plaintiff, who was born in 1969, pleaded guilty to aggravated criminal sexual abuse involving a 15-year-old victim and was sentenced to three years' probation, which he completed. According to plaintiff's complaint allegations, on August 24, 2018, he and his family moved into a house on Kathi Drive in Hampshire, he had built the house to accommodate his special needs, relying on locational approval of local authorities, and he registered the address as required by the Sex Offender Registration Act (Registration Act) (730 ILCS 150/1 *et seq.* (West 2018)). As alleged, later in 2018, the Hampshire Police Department informed plaintiff that a day care home was operating within 500 feet of his residence and, pursuant to the Residency Restriction, he was required to move from his residence within 22 days. Plaintiff alleged that he and his wife moved from the Kathi Drive home, purchased a travel trailer, and moved into a local recreational vehicle resort in Marengo, Illinois.

¶ 5 Plaintiff alleged that, after about a year, the resort owner notified plaintiff he could no longer live there based on his status as a sex offender and plaintiff moved

to a motel until it was no longer cost-effective to stay. Plaintiff alleged that, after more than 100 rejections to his requests to lease apartments, he slept in the back seat of his pickup truck at various areas within the Hampshire area. Accordingly, in November 2019, plaintiff filed a *pro se* complaint in the circuit court, and on January 29, 2020, the circuit court entered a temporary restraining order enjoining defendants from enforcing the Residency Restriction against plaintiff, thereby allowing him to reside at his Kathi Drive address.

¶ 6        In his second amended, *pro se* "Complaint for Civil Rights Violations, Declaratory Judgment, and Other Injunctive Relief," filed on September 8, 2020, plaintiff named as defendants the Hampshire Police Department, the Kane County State's Attorney, the Director of the Illinois State Police, and the Illinois Attorney General in their official capacities. In the six counts set out in the second amended complaint, plaintiff alleged violations of (1) the *ex post facto* clauses of the United States Constitution and the Illinois Constitution (U.S. Const., art. I, §§ 9, 10; Ill. Const. 1970, art. I, § 16), (2) the guarantee of procedural due process of the United States Constitution and the Illinois Constitution (U.S. Const., amend. XIV, § 1; Ill. Const. 1970, art. I, § 2), (3) the guarantee of substantive due process of the United States Constitution and the Illinois Constitution (U.S. Const., amend. XIV, § 1; Ill. Const. 1970, art. I, § 2), (4) the proportionate penalties clause of the Illinois Constitution (Ill. Const. 1970, art. I, § 11), (5) the eighth amendment prohibition on cruel and unusual punishment (U.S. Const., amend. VIII), and (6) negligence principles in that the ISP Director and the Hampshire Police Department were negligent in failing to timely inform him that the location of his residence did not comply with the Residency Restriction.

¶ 7        In his second amended complaint, plaintiff also included allegations that the Residency Restriction and various provisions of the Registration Act were void for vagueness and that the Residency Restriction was void as a violation of equal protection under the United States and Illinois Constitutions (U.S. Const., amend. XIV, § 1; Ill. Const. 1970, art. I, § 2). Plaintiff's second amended complaint challenged the Residency Restriction, other "presence restrictions" applying to sex offenders (720 ILCS 5/11-9.3 (West 2018)), the Registration Act (730 ILCS 150/1 *et seq.* (West 2018)), the Sex Offender Community Notification Law (Notification Law) (730 ILCS 152/101 *et seq.* (West 2018)), and section 5-5-3(*o*) of the Unified

Code of Corrections (730 ILCS 5/5-5-3(*o*) (West 2018)), which requires individuals convicted of sex offenses to annually renew their driver's licenses.

¶ 8   In his second amended complaint, plaintiff alleged that "residency restrictions" "interfere[d] with [his] fundamental liberty right[s] *** to intrastate travel and *** to parent one's children." Plaintiff also alleged that the Registration Act, the Notification Law, and the driver's license renewal provisions "create multiple irrebuttable presumptions," "unconstitutionally rely on the irrebuttable presumptions that [plaintiff] is dangerous and likely to commit further criminal sexual acts," and are therefore invalid.

¶ 9   As relief, plaintiff sought (1) a preliminary and permanent injunction prohibiting defendants from arresting or prosecuting him for violating the Residency Restriction, (2) a declaratory judgment that the Residency Restriction is unconstitutional as applied to him, (3) a preliminary and permanent injunction prohibiting defendants from enforcing the other provisions at issue against him, and (4) a declaratory judgment that the provisions at issue are unconstitutional as applied to him.

¶ 10   Pursuant to section 2-619.1 of the Code of Civil Procedure (735 ILCS 5/2-619.1 (West 2020)), defendants filed a motion to dismiss plaintiff's second amended complaint. On June 22, 2021, the circuit court granted in part defendants' motion to dismiss, dismissing plaintiff's negligence, *ex post facto*, procedural due process, proportionate penalties, eighth amendment, and void for vagueness claims. However, the circuit court determined that the Residency Restriction "at issue (specifically the definition of '[d]ay [c]are [h]ome' and its impact) violate both the equal protection clause as well as substantive due process." The circuit court agreed with defendants that the Residency Restriction was subject to rational basis review because it did not implicate a suspect class or a fundamental right. The circuit court nevertheless concluded that, although protecting children from sex offenders was "a legitimate, if not compelling, state interest," the Residency Restriction was not rationally related to the State's interest in protecting children from sex offenders.

¶ 11   The circuit court held that the definition of "day care home" was not rationally related to that interest because its application "leads to some absurd results." See 225 ILCS 10/2.18 (West 2018) (defining "day care home" as "family homes which receive more than 3 *** children for less than 24 hours per day" including "the

family's natural or adopted children and all other persons under the age of 12," not including "facilities which receive only children from a single household"). Specifically, the circuit court observed, a sex offender may live next door to someone with a child under 12 years old who also cared for another unrelated child under 12 years old, or next door to someone who had "five, ten or a dozen children without consequence," thereby allowing him to live in a house within 500 feet of dozens of children. Yet, the circuit court observed, when the first neighbor invites a third child into the home, plaintiff's ability to reside in that location is terminated. As a result, the court declared, "[s]uch a scheme is not rationally related to the legitimate state interest of protecting children, and does nothing to promote it."

¶ 12    Accordingly, the circuit court dismissed with prejudice counts I, II, IV, V, and VI of plaintiff's complaint but declined to dismiss count III or the equal protection allegations in plaintiff's complaint. In its order, the circuit court entered a permanent injunction in favor of plaintiff and against defendants, enjoining defendants from refusing to register plaintiff at his address, taking any action to force plaintiff to vacate the property, or prosecuting him based on the Residency Restriction. The next day, the circuit court entered an order clarifying that the prior day's order disposed of all of plaintiff's claims and, therefore, was final and appealable.

¶ 13    The ISP Director, Attorney General, and Kane County State's Attorney filed notices of appeal, and this court consolidated the appeals. Defendants appealed directly to this court (Ill. S. Ct. R. 302(a)(1) (eff. Oct. 4, 2011) (appeals from final judgments of circuit courts shall be taken directly to the supreme court in cases in which a statute of this state has been held invalid)), and this court allowed plaintiff's late notice of cross-appeal from the portion of the circuit court's order dismissing his claims.[1]

---

[1]In this court, plaintiff ostensibly sought reversal of the circuit court's order dismissing his negligence claim against the Hampshire Police Department. Prior to oral arguments, the Hampshire Police Department filed a motion to dismiss plaintiff's appeal of this claim, and this court took the Hampshire Police Department's motion to dismiss with the case. At oral argument, plaintiff expressly waived any negligence claim against Hampshire Police Department. Accordingly, we hereby grant the Hampshire Police Department's motion to dismiss the appeal with regard to plaintiff's negligence claim against it.

¶ 14 Thereafter, defendants moved this court to vacate the circuit court's orders and remand for further proceedings because those orders failed to comply with Illinois Supreme Court Rule 18 (eff. Sept. 1, 2006) (court shall not find unconstitutional a statute unless court identifies what portion of the statute is being held unconstitutional and sets forth specific grounds for the finding of unconstitutionality, including whether statute is being found unconstitutional on its face, as applied to the case *sub judice*, or both). This court denied defendants' request to vacate the circuit court's orders but granted their request to remand the matter for further proceedings for the "limited purpose of making and recording findings in compliance with Supreme Court Rule 18."

¶ 15 On remand, the circuit court held a status hearing wherein defendants proposed submitting stipulated facts or, if the parties could not agree to the facts, proceeding to an evidentiary hearing. Plaintiff objected, arguing that this court's limited remand order did not allow for an evidentiary hearing. Defendants sought clarification as to whether the circuit court intended to hold the Residency Restriction unconstitutional on its face or as applied to plaintiff. The circuit court acknowledged that it "had no facts that would have specifically related to [plaintiff] and what was happening on his block" and stated that it had held that the challenged provision was facially unconstitutional. The circuit court stated that its holding "was addressing facially the definition of a home daycare and its interplay with the [Residency Restriction]." The circuit court stated that the Residency Restriction was facially unconstitutional because it was not rationally related to its purpose.

¶ 16 On February 16, 2022, the circuit court entered a written order, specifying that it found unconstitutional the Residency Restriction (720 ILCS 5/11-9.3(b-10) (West 2018)) that made it illegal for a "child sex offender to knowingly reside within 500 feet of a *** day care home" as defined in section 2.18 of the Child Care Act of 1969 (Child Care Act) (225 ILCS 10/2.18 (West 2018)). The circuit court noted that its "findings [we]re based both upon the due process clause as well as equal protection grounds." Because the relevant provisions did not infringe upon a fundamental right, nor was plaintiff a member of a suspect or protected class, the circuit court applied the rational basis test. The circuit court concluded that, although the State had a legitimate interest in protecting children from child sex offenders, "the statutory scheme is not rationally related to that interest, given the definition of 'day care homes.' "

¶ 17 According to the circuit court, the statutory "scheme is actually irrational" because the definition of "day care home" includes the natural children of the homeowner. As a result, a child sex offender could live next to a family with 10 children under the age of 12 but could not live next to that family if it accepted 2 unrelated children into the home for day care. The circuit court also found that the Residency Restriction violated plaintiff's equal protection rights because it treated similar groups of individuals differently. Specifically, it held that child sex offenders are treated differently depending on whether they live next to a home day care "consisting of only 3 qualifying children"; a home with a family "of 5, 7, or 10 children"; or "next to the family that has 3 to 12 kids for day care that all come from a single household." The circuit court stated that the first situation was illegal, while the latter two were not. The circuit court concluded that the statute did not survive an equal protection challenge because the child sex offender living next to a day care home consisting of only three qualifying children is treated differently than the child sex offender living next door to the family of 5, 7, or 10 children.

¶ 18 The circuit court further explained that it was "primarily addressing a facial defect in the statutory scheme," although "[t]o some extent *** the decision was also as applied to" plaintiff. The circuit court noted that plaintiff had objected to defendants' proposal to supplement the record with stipulated facts and decided that "no additional facts are necessary." The circuit court found that the facial defect was apparent given the court's analysis, *i.e.*, that it is the definition of a day care home, and its inclusion of natural children in the home, that leads to absurd results.

¶ 19                                  II. ANALYSIS

¶ 20                              A. Defendants' Appeal

¶ 21 Initially, we note that, absent evidence in the record with regard to plaintiff's specific circumstances, the circuit court erred to the extent it found that the Residency Restriction was unconstitutional as applied to plaintiff.

¶ 22 "Although facial and as-applied constitutional challenges are both intended to address constitutional infirmities, they are not interchangeable." *People v. Thompson*, 2015 IL 118151, ¶ 37. "The distinction between facial and as-applied constitutional challenges is critical." *People v. Harris*, 2018 IL 121932, ¶ 38. "A

party raising a facial challenge must establish that the statute is unconstitutional under any possible set of facts, while an as-applied challenge requires a showing that the statute is unconstitutional as it applies to the specific facts and circumstances of the challenging party." *Id.* "[I]n an 'as applied' challenge a plaintiff protests against how an enactment was applied in the particular context in which the plaintiff acted or proposed to act." *Napleton v. Village of Hinsdale*, 229 Ill. 2d 296, 306 (2008). "[I]f a plaintiff prevails in an as-applied claim, he may enjoin the objectionable enforcement of a statute only against himself, while a successful facial challenge voids enactment in its entirety and in all applications." *Morr-Fitz, Inc. v. Blagojevich*, 231 Ill. 2d 474, 498 (2008).

¶ 23    "By definition, an as-applied constitutional challenge is dependent on the particular circumstances and facts of the individual defendant or petitioner." *Thompson*, 2015 IL 118151, ¶ 37. "Therefore, it is paramount that the record be sufficiently developed in terms of those facts and circumstances for purposes of appellate review." *Id.* This court has explained: "A court is not capable of making an 'as applied' determination of unconstitutionality when there has been no evidentiary hearing and no findings of fact. [Citation.] Without an evidentiary record, any finding that a statute is unconstitutional 'as applied' is premature." (Internal quotation marks omitted.) *Harris*, 2018 IL 121932, ¶ 39.

¶ 24    In this case, the circuit court did not hear evidence regarding plaintiff's specific circumstances before ruling that the Residency Restriction was unconstitutional as applied to plaintiff and entering a permanent injunction in plaintiff's favor. Instead, the record contains only unverified allegations.

¶ 25    After this court entered a limited remand to the circuit court to clarify its findings, the circuit court stated that it was finding the Residency Restriction facially unconstitutional; however, a few words later, the circuit court found it unconstitutional "as applied." Nevertheless, the record remained entirely devoid of any evidence of plaintiff's specific circumstances to support an as-applied constitutional challenge to the Residency Restriction, and thus, the circuit court erred to the extent it found the Residency Restriction unconstitutional as applied to plaintiff.

¶ 26    Defendants argue that plaintiff abandoned his as-applied constitutional challenges with regard to the circuit court's order finding the Residency Restriction

unconstitutional pursuant to substantive due process and equal protection principles because he objected to an evidentiary hearing during the limited remand from this court. However, this court's remand order was limited, merely requested clarification by the circuit court, and did not direct that an evidentiary hearing be held. We therefore conclude that, although plaintiff objected to an evidentiary hearing during the limited remand from this court, he did not waive his opportunity to present evidence to support his as-applied challenge and request for a permanent injunction on this basis. See also *In re Marriage of Seffren*, 366 Ill. App. 3d 628, 637 (2006) (permanent injunction is final judgment generally entered after hearing on merits demonstrating requisite elements).

¶ 27       Accordingly, to the extent the circuit court found that the Residency Restriction was unconstitutional as applied to plaintiff, its order must be vacated because there is no evidence in the record upon which the circuit court could so decide. We therefore vacate that portion of the circuit court's order finding the Residency Restriction unconstitutional as applied to plaintiff, and we remand the cause for a hearing to consider the plaintiff's particular facts and circumstances in lodging this as-applied challenge.

¶ 28       Nevertheless, because the circuit court's order granting a permanent injunction on the basis that the Residency Restriction is facially unconstitutional involves a matter of law, *i.e.*, whether plaintiff alleged a clear and ascertainable right in need of protection (*Vaughn v. City of Carbondale*, 2016 IL 119181, ¶ 44), we proceed to review the circuit court's judgment on this basis (see *Davis v. Brown*, 221 Ill. 2d 435, 443 (2006) (lower court's judgment that statute was constitutional on its face involved only questions of law)).

¶ 29              1. Substantive Due Process—Residency Restriction

¶ 30       Plaintiff asserts, and the circuit court held, that the Residency Restriction, making it unlawful for a child sex offender to knowingly reside within 500 feet of a "day care home" (720 ILCS 5/11-9.3(b-10) (West 2018)), as that term is defined in the Child Care Act (225 ILCS 10/2.18 (West 2018)), is facially unconstitutional as violative of plaintiff's substantive due process guarantees. We disagree.

¶ 31    "All statutes carry a strong presumption of constitutionality," and they must be upheld as constitutional "whenever reasonably possible, resolving all doubts in favor of their validity." *People v. Pepitone*, 2018 IL 122034, ¶ 12. "This presumption derives from the fact that when a circuit court declares a statute unconstitutional, such a holding destabilizes the area of law within which the statute is invalidated until that ruling is reviewed by this court." *People v. Cornelius*, 213 Ill. 2d 178, 189 (2004). "To rebut the presumption, a party challenging a statute must establish clearly that it violates the constitution." *Pepitone*, 2018 IL 122034, ¶ 12. On the constitutional issue before us, our review is *de novo*. *People v. Eubanks*, 2019 IL 123525, ¶ 34 (court reviews *de novo* a lower court's decision regarding the constitutionality of a statute). Likewise, when a circuit court's order granting a permanent injunction involves a question of law, this court's review is *de novo*. *Vaughn*, 2016 IL 119181, ¶ 22.

¶ 32    The due process clause of our state constitution is found in article I, section 2, and the language of our due process clause is nearly identical to its federal counterpart. See U.S. Const., amend. XIV, § 1 ("nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws"); Ill. Const. 1970, art. I, § 2 ("No person shall be deprived of life, liberty or property without due process of law nor be denied the equal protection of the laws."). "[T]his court has adopted the 'limited lockstep' approach for interpreting cognate provisions of our state and federal constitutions." *Hope Clinic for Women*, *Ltd. v. Flores*, 2013 IL 112673, ¶ 47; see also *People v. Caballes*, 221 Ill. 2d 282, 297 (2006).

> "Under this approach, when the language of the provisions within our state and federal constitutions is nearly identical, departure from the United States Supreme Court's construction of the provision will generally be warranted only if we find ' "in the language of our constitution, or in the debates and the committee reports of the constitutional convention, something which will indicate that the provisions of our constitution are intended to be construed differently than are similar provisions in the Federal Constitution, after which they are patterned." ' " *Hope Clinic for Women*, 2013 IL 112673, ¶ 47 (quoting *Caballes*, 221 Ill. 2d at 297, quoting *People v. Tisler*, 103 Ill. 2d 226, 245 (1984)).

¶ 33    In this case, plaintiff states that the "constitutions' text[s] are in lockstep," agrees with defendants that the analysis is the same under either constitution, and does not assert any basis suggesting it unsound to follow United States Supreme Court precedent in lockstep here. See *id.* In addition, we find no compelling reason to read the due process clause in the Illinois Constitution as providing more protection than its federal counterpart in plaintiff's substantive due process challenge before us. See *In re M.A.*, 2015 IL 118049, ¶ 53 ("no compelling reason to interpret the Illinois due process clause to provide greater protection than its federal counterpart" in substantive due process challenge to the Violent Offender Against Youth Registration Act (Violent Offender Act) (730 ILCS 154/1 *et seq.* (West 2012))).

¶ 34    "Substantive due process bars governmental action that infringes upon a protected interest when such action is itself arbitrary." *Pepitone*, 2018 IL 122034, ¶ 13; see also *People v. Cardona*, 2013 IL 114076, ¶ 17 ("a substantive due process claim asserts that the deprivation at issue is constitutionality invalid in and of itself, irrespective of the process leading up to it"). "When confronted with a claim that a statute violates the due process guarantees of the United States and Illinois Constitutions, courts first must determine the nature of the right purportedly infringed upon by the statute." *In re J.W.*, 204 Ill. 2d 50, 66 (2003). "Classification of the right affected is critical because the nature of the right dictates the level of scrutiny courts employ in determining whether the statute in question passes constitutional muster." *In re D.W.*, 214 Ill. 2d 289, 310 (2005).

¶ 35    "When a statute is challenged based upon substantive due process grounds, the threshold question is whether the statute restricts or regulates a fundamental right." *Hayashi v. Illinois Department of Financial & Professional Regulation*, 2014 IL 116023, ¶ 28. "A statute which restricts a fundamental right must be examined under strict scrutiny." *Id.* "Under strict scrutiny analysis, legislation which significantly interferes with the exercise of a fundamental right will be upheld only if it is necessary to promote a compelling state interest and is narrowly tailored to effectuate only that interest." *Id.*

¶ 36    "Where the statute does not affect a fundamental constitutional right, the test for determining whether the statute complies with substantive due process is the rational basis test." *In re J.W.*, 204 Ill. 2d at 67. "To satisfy this test, a statute need

only bear a rational relationship to the purpose the legislature sought to accomplish in enacting the statute." *Id.* "Pursuant to this test, a statute will be upheld if it 'bears a reasonable relationship to a public interest to be served, and the means adopted are a reasonable method of accomplishing the desired objective.' " *Id.* (quoting *People v. Adams*, 144 Ill. 2d 381, 390 (1991)).

¶ 37 Fundamental rights are those that are "objectively, deeply rooted in this Nation's history and tradition" and "implicit in the concept of ordered liberty," so that "neither liberty nor justice would exist if they were sacrificed." (Internal quotation marks omitted.) *Washington v. Glucksberg*, 521 U.S. 702, 720-21 (1997). The United States Supreme Court has deemed fundamental the right to marry (*Loving v. Virginia*, 388 U.S. 1, 12 (1967)), the right to marital privacy involving contraceptives (*Griswold v. Connecticut*, 381 U.S. 479, 485-86 (1965)), the right to procreation (*Skinner v. Oklahoma ex rel. Williamson*, 316 U.S. 535, 541 (1942)), and the right to direct the education and upbringing of one's children (*Meyer v. Nebraska*, 262 U.S. 390, 400 (1923)). "This court has held that fundamental rights include the expression of ideas (*i.e.*, freedom of speech), participation in the political process, travel among the states[,] and privacy with regard to the most intimate and personal aspects of one's life." *Napleton*, 229 Ill. 2d at 307-08.

¶ 38 In contrast, this court has held that a child sex offender has no fundamental constitutional right to be free from damage to his reputation or from shame, stigma, and embarrassment resulting from a conviction for sexually abusing a child (*Cornelius*, 213 Ill. 2d at 204; see also *Paul v. Davis*, 424 U.S. 693, 701 (1976)); a juvenile sex offender has no fundamental constitutional right that is implicated through lifetime sex offender registration (*In re J.W.*, 204 Ill. 2d at 67); a child sex offender has no fundamental right to be present in a public park (*Pepitone*, 2018 IL 122034, ¶ 14); and a child sex offender has no fundamental right to take his child to a park (*People v. Legoo*, 2020 IL 124965, ¶ 32).

¶ 39 The Residency Restriction, found in section 11-9.3(b-10) of the Criminal Code, provides that "[i]t is unlawful for a child sex offender to knowingly reside within 500 feet of a *** day care home" (720 ILCS 5/11-9.3(b-10) (West 2018)), which "has the meaning ascribed to it in [s]ection 2.18 of the Child Care Act of 1969" (*id.* § 11-9.3(d)(7)). Section 11-9.3(b-10) further provides: "Nothing in this subsection (b-10) prohibits a child sex offender from residing within 500 feet of a day care

home \*\*\* if the property is owned by the child sex offender and was purchased before August 14, 2008 (the effective date of Public Act 95-821)." *Id.* § 11-9.3(b-10). "Child sex offender" is defined as, *inter alia*, any person who is convicted of a sex offense, including aggravated criminal sexual abuse, and the victim is a person under 18 years of age at the time of the offense. *Id.* § 11-9.3(d)(1). "Day care home" is defined in section 2.18 of the Child Care Act as follows:

> "family homes which receive more than 3 up to a maximum of 12 children for less than 24 hours per day. The number counted includes the family's natural or adopted children and all other persons under the age of 12. The term does not include facilities which receive only children from a single household." 225 ILCS 10/2.18 (West 2018).

¶ 40     In conducting a substantive due process analysis, a court "must begin with a careful description of the asserted right, for '[t]he doctrine of judicial self-restraint requires us to exercise the utmost care whenever we are asked to break new ground in this field.' " *Reno v. Flores*, 507 U.S. 292, 302 (1993) (quoting *Collins v. City of Harker Heights*, 503 U.S. 115, 125 (1992)). Here, the Residency Restriction affects a child sex offender's freedom to live in a particular location in relation to a day care home.

¶ 41     However, the right to live where one pleases is not "deeply rooted in this Nation's history and tradition" or "implicit in the concept of ordered liberty" such that "neither liberty nor justice would exist if [it] were sacrificed." (Internal quotation marks omitted.) See *Glucksberg*, 521 U.S. at 720-21. Plaintiff asserts a fundamental right to live near a day care home where children congregate, which is an uncomfortable fit with the liberty interests that have been deemed fundamental. See *Doe v. City of Lafayette*, 377 F.3d 757, 770-71 (7th Cir. 2004); see also *Loving*, 388 U.S. at 12; *Griswold*, 381 U.S. at 485-86; *Skinner*, 316 U.S. at 541; *Meyer*, 262 U.S. at 400; *Napleton*, 229 Ill. 2d at 307-08.

¶ 42     Moreover, although plaintiff asserts that the Residency Restriction infringes upon a child sex offender's fundamental liberty interest "in raising and caring for [his] children" (*Legoo*, 2020 IL 124965, ¶ 31), the Residency Restriction does not affect the right of a child sex offender to direct the upbringing and education of his children or make decisions involving the care, custody, and control of his children. The Residency Restriction merely limits where a child sex offender may reside

geographically, restricting the location where he lives in relation to where children congregate. See *People v. Leroy*, 357 Ill. App. 3d 530, 534 (2005) (plain language of provision prohibiting sex offender from living near playground or facility providing programs exclusively directed toward children merely restricts where, geographically, the offender may live in relation to such a playground or facility, and there is no fundamental right to live with mother within 500 feet of such playground or facility); see also *Doe I v. Miller*, 405 F.3d 700, 711 (8th Cir. 2005) (Iowa sex offender residency restriction "does not directly regulate the family relationship or prevent any family member from residing with a sex offender in a residence that is consistent with the statute"). The Residency Restriction does not prohibit a child sex offender from establishing a home or from living with his family in a residence consistent with the statute.

¶ 43        In his complaint, plaintiff alleged that the Residency Restriction implicates a child sex offender's ability to enjoy his current or future properties. However, where a child sex offender, like plaintiff, purchases land or a home after the Residency Restriction was in effect (Pub. Act 95-821 (eff. Aug. 14, 2008)), his property interest in the land and the house is already limited by the Residency Restriction. See also *Vasquez v. Foxx*, 895 F.3d 515, 524 (7th Cir. 2018) (affirming dismissal of plaintiffs' takings claims because residency restriction was "on the books" when home was purchased and it was "necessarily part of any property-rights expectations [that he] could have held"), *overruled on other grounds by Koch v. Village of Hartland*, 43 F.4th 747 (7th Cir. 2022); see also *Caulkins v. Pritzker*, 2023 IL 129453, ¶ 71 ("grandfathered individuals have a reliance interest based on their acquisition before the restrictions took effect").

¶ 44        In his complaint, plaintiff also alleged that the Residency Restriction infringes upon a child sex offender's right to intrastate travel. However, although a child sex offender is prohibited from residing at a residence located within 500 feet of a day care home, he is not prohibited from traveling to and from it. See *Weems v. Little Rock Police Department*, 453 F.3d 1010, 1016 (8th Cir. 2006) (Arkansas residency restriction did not prevent sex offender from traveling to and from any part of the state or erect an actual barrier to intrastate movement); *Doe I*, 405 F.3d at 713 ("Iowa residency restriction does not prevent a sex offender from entering or leaving any part of the [s]tate *** and *** does not erect any actual barrier to

intrastate movement"). Accordingly, the Residency Restriction does not infringe upon plaintiff's right to intrastate travel.

¶ 45    In sum, the Residency Restriction does not infringe upon a child sex offender's fundamental rights, and rational basis review is appropriate. See also *Vasquez*, 895 F.3d at 525 (Alaska's residency restriction prohibiting sex offenders from living within 500 feet of child day care homes and group day care homes does not infringe on fundamental right to establish a home because the law constrains only where they can do so, and thus, rational basis review is appropriate). Under this test, our inquiry is twofold: "[W]e must determine whether there is a legitimate state interest behind the legislation, and if so, whether there is a reasonable relationship between that interest and the means the legislature has chosen to pursue it." *People v. Johnson*, 225 Ill. 2d 573, 584 (2007).

¶ 46    Although the rational basis test is not " 'toothless' " (*People v. Jones*, 223 Ill. 2d 569, 596 (2006), quoting *Mathews v. De Castro*, 429 U.S. 181, 185 (1976)), it is nevertheless highly deferential to the findings of the legislature (*People v. Rizzo*, 2016 IL 118599, ¶ 45). *Pepitone*, 2018 IL 122034, ¶ 17. The legislature's judgments in drafting a statute " 'may be based on rational speculation unsupported by evidence or empirical data' " and are not subject to judicial factfinding. *People v. Boeckmann*, 238 Ill. 2d 1, 7 (2010) (quoting *Arangold v. Zehnder*, 204 Ill. 2d 142, 147 (2003)). "If there is any conceivable set of facts to justify the statute, it must be upheld." *Pepitone*, 2018 IL 122034, ¶ 17. "This court will not second-guess the wisdom of legislative enactments or dictate alternative means to achieve the desired result." *Id.*; see also *id.* ¶ 24 (legislature is in a better position than the judiciary to gather and evaluate data involving complex problems).

¶ 47    The legislature has a legitimate interest in protecting children from neighboring child sex offenders and sexual predators. See *People v. Minnis*, 2016 IL 119563, ¶ 37 (" 'The prevention of sexual exploitation and abuse of children constitutes a government objective of surpassing importance.' " (quoting *New York v. Ferber*, 458 U.S. 747, 757 (1982))). The Residency Restriction bears a reasonable relationship to furthering the State's public interest in protecting children by creating a buffer between a child day care home and the home of a child sex offender to protect children from the harm for which child sex offenders have been convicted. The Residency Restriction reduces the amount of incidental contact

child sex offenders have with nearby children and reduces the opportunity for them to commit offenses against children. See *Leroy*, 357 Ill. App. 3d at 534 (provision prohibiting child sex offenders from living within 500 feet of a playground reviewed under rational basis standard bears a reasonable relationship to the goal of protecting children from known child sex offenders and sets forth a reasonable method of furthering that goal).

¶ 48    The circuit court departed from this reasoning, holding that the Residency Restriction was "irrational" because it would be lawful for a child sex offender to live next door to a family with 10 children under the age of 12, but unlawful for him to live next to that family if it took in two children under the age of 12 from separate households for day care. However, a statute will be upheld if there is "any conceivable set of facts to show a rational basis for the statute." *Johnson*, 225 Ill. 2d at 585. Because it is conceivable that children in the hypothetical family envisioned by the circuit court, with 10 children of their own before taking in 2 children from separate households under the age of 12, could be protected by the Residency Restriction, it satisfies the rational basis test.

¶ 49    The circuit court held that the "only way the children are protected in the first instance is if their parents take in enough day care kids from separate households to place them within the 3 to 12 range of protected children." However, as noted by defendants, "[t]he legislature need not choose between legislating against all evils of the same kind or not legislating at all." *Chicago National League Ball Club, Inc. v. Thompson*, 108 Ill. 2d 357, 367 (1985). "An entire remedial scheme will not be invalidated simply because it failed, through inadvertence or otherwise, to cover every evil that might conceivably have been attacked." (Internal quotation marks omitted.) *Id.* The statute will be upheld if there is "any conceivable set of facts to show a rational basis for the statute." *Johnson*, 225 Ill. 2d at 585.

¶ 50    Plaintiff cites studies regarding low recidivism rates for sex offenders to argue that sex offender residency restrictions endanger communities. Plaintiff also argues that the Residency Restriction is not effective, may increase sex offender risk by undermining stability, and should be implemented in a targeted rather than one-size-fits-all fashion. However, under the rational basis test, courts "will not question the wisdom" of the General Assembly's choice in enacting legislation because "a statute need not be the best method of accomplishing a legislative goal; it must

- 16 -

simply be reasonable." *Id.* at 592. "[T]he rational basis test does not require narrow tailoring; it only requires rationality." *Pepitone*, 2018 IL 122034, ¶ 30; see also *Moline School District No. 40 Board of Education v. Quinn*, 2016 IL 119704, ¶ 28 ("the fact that a law might be ill-conceived does not, in itself, create a constitutional problem for us to fix, for whether a statute is wise and whether it is the best means to achieve the desired result are matters for the legislature, not the courts"); *In re J.W.*, 204 Ill. 2d at 72 ("Whether there are better means to achieve this result *** is a matter better left to the legislature.").

¶ 51     Under rational basis review, the Residency Restriction is reasonably related to the legitimate state interest of protecting children. It is reasonably conceivable that preventing child sex offenders from residing within 500 feet of a home day care where children gather will protect children. By distancing child sex offenders from areas where children are present, the legislature rationally sought to avoid giving child sex offenders the opportunity to reoffend. *Pepitone*, 2018 IL 122034, ¶ 31. Because the Residency Restriction is rationally related to a legitimate government interest, the circuit court erred in holding it facially unconstitutional in violation of substantive due process and entering a permanent injunction on this basis. Accordingly, we reverse the portion of the circuit court's judgment finding the Residency Restriction facially unconstitutional.

¶ 52                                    2. Equal Protection

¶ 53     In the case *sub judice*, the circuit court also held that the Residency Restriction violates the equal protection clauses of the United States and Illinois Constitutions. U.S. Const., amend. XIV, § 1 (no state shall "deny to any person *** the equal protection of the laws"); Ill. Const. 1970, art. I, § 2 ("No person shall be deprived of life, liberty or property without due process of law nor be denied the equal protection of the laws."). Although not separately pleaded in a numbered count in his complaint (735 ILCS 5/2-603(b) (West 2018) ("[e]ach separate cause of action *** shall be stated in a separate count[,] *** and each count *** shall be separately pleaded, designated[,] and numbered")), plaintiff included allegations in his second amended complaint that the Residency Restriction violates the equal protection clauses of the federal and state constitutions. When conducting an equal protection

analysis, this court applies the same standard under both the Illinois Constitution and the United States Constitution. *In re M.A.*, 2015 IL 118049, ¶ 23.

¶ 54       "The equal protection clause guarantees that similarly situated individuals will be treated in a similar manner, unless the government can demonstrate an appropriate reason to treat those individuals differently." *Id.* ¶ 24. "The equal protection clause does not forbid the legislature from drawing proper distinctions in legislation among different categories of people, but the equal protection clause does prohibit the legislature from doing so based on criteria wholly unrelated to the legislation's purpose." *Id.*

¶ 55       "Constitutional challenges to statutes under due process and equal protection require the same essential analysis." *People v. Alcozer*, 241 Ill. 2d 248, 262 (2011). "It is the nature of the right affected that dictates the level of scrutiny we employ in determining whether the statute meets constitutional requirements." *Id.* "If the challenged statute implicates a fundamental right or discriminates based on a suspect classification of race or national origin, the court subjects the statute to 'strict scrutiny' analysis and will uphold the statute only if it is narrowly tailored to serve a compelling State interest." *Id.* If a statute does not implicate a fundamental right or discriminate based on a suspect class (such as race or national origin), then the rational basis test applies. *Id.*

¶ 56       Plaintiff argues that, because the Illinois Human Rights Act (775 ILCS 5/2-103.1 (West 2020)) prohibits discrimination by an employer against an individual based on his conviction record, a child sex offender is a member of a "protected class" and thus strict scrutiny, rather than rational basis, review of the Residency Restriction is warranted for an equal protection claim. However, whether an individual is a member of a protected class for the purpose of an equal protection challenge is a distinct question. "Under an equal protection analysis, suspect classifications are based on race or national origin." *Alcozer*, 241 Ill. 2d at 262; see also *Students for Fair Admissions, Inc. v. President & Fellows of Harvard College*, 600 U.S. 181, 206 (2023) (courts apply strict scrutiny for classifications based on race, color, and national origin). Convicted sex offenders are not a suspect class. See *People v. Donoho*, 204 Ill. 2d 159, 177 (2003) ("Sexual offense defendants are not a suspect class."); *Alcozer*, 241 Ill. 2d at 263 ("Prisoners are not a suspect class."). Because we have herein determined that the Residency Restriction does

not implicate a fundamental right and does not discriminate based on a suspect class, the rational basis test applies, requiring the statute to bear a rational relationship to the purpose the legislature intended to achieve by enacting it. See *Alcoze*r, 241 Ill. 2d at 262. "If any set of facts can reasonably be conceived to justify the classification, it must be upheld." *People v. Botruff*, 212 Ill. 2d 166, 177 (2004).

¶ 57       Again, the Residency Restriction satisfies the rational basis test because the State has an indisputable legitimate interest in protecting children from sex abuse, and it is reasonably conceivable that prohibiting child sex offenders from residing within 500 feet of a day care home where children congregate would protect some children from such abuse. Nevertheless, the circuit court held that the Residency Restriction violated the equal protection clause because "[t]he child sex offender living next to a day care home consisting of only 3 qualifying children is treated differently than the child sex offender living next door to the family of 5, 7, or 10 children." However, contrary to the circuit court's holding, the statute treats all child sex offenders purchasing homes after August 14, 2008, similarly in that all are prohibited from living within 500 feet of a day care home. Moreover, as previously noted herein, the legislature, in creating a statute, is not required to solve all the evils of a particular wrong in one fell swoop. *Adams*, 144 Ill. 2d at 391. Accordingly, the circuit court erred in finding that the Residency Restriction violated equal protection principles on this basis.

¶ 58       In his complaint, plaintiff alleged that the Residency Restriction does not survive rational basis review because it allows some child sex offenders to remain in their homes depending on when they purchased them and is therefore irrational. See 720 ILCS 5/11-9.3(b-10) (West 2018) ("Nothing in this subsection (b-10) prohibits a child sex offender from residing within 500 feet of a day care home *** if the property is owned by the child sex offender and was purchased before August 14, 2008 (the effective date of Public Act 95-821).").

¶ 59       "A threshold matter in addressing an equal protection claim is determining whether the individual claiming an equal protection violation is similarly situated to the comparison group." *In re M.A.*, 2015 IL 118049, ¶ 25. Equal protection does not forbid all classifications. *Id.* Equal protection prevents governmental decisionmakers from treating differently persons who are in all relevant respects alike. *Id.* Accordingly, "[w]hen a party bringing an equal protection claim fails to

show that he is similarly situated to the comparison group, his equal protection challenge fails." *Id.* ¶ 26.

¶ 60 The Residency Restriction passes the rational basis test even though it applies to some, but not all, individuals who are convicted of sex crimes. See *Adams*, 144 Ill. 2d at 391-92 (Registration Act does not violate equal protection where it applies to some, but not all, individuals who are convicted of sex crimes). The Residency Restriction does not violate equal protection as applied to the group of sex offenders buying their homes prior to 2008 and the group buying their homes subsequent to 2008 because they are not similarly situated. See also *Caulkins*, 2023 IL 129453, ¶¶ 70-71 (rejecting equal protection claim brought by plaintiffs who did not own prohibited firearms before challenged law went into effect because they were not similarly situated to individuals who did own such firearms and thus had a "reliance interest" in previously purchased firearms).

¶ 61 A child sex offender who purchased a house before the Residency Restriction was enacted and one who purchased a house after that are not similarly situated because the former purchased his home in reliance on the previously existing law but the latter did not. See *id.* The Residency Restriction is not deemed irrational because the General Assembly chose to respect the reliance and property interests of child sex offenders who purchased their homes before the Residency Restriction went into effect. Accordingly, the circuit court erred in finding that the Residency Restriction violated the plaintiff's equal protection rights. Therefore, we reverse the circuit court's order finding the Residency Restriction facially unconstitutional pursuant to plaintiff's substantive due process and equal protection claims. We nevertheless remand the cause to the circuit court for an evidentiary hearing on plaintiff's as-applied constitutional challenges to the Residency Restriction pursuant to substantive due process and equal protection.

¶ 62                                B. Plaintiff's Cross-Appeal

¶ 63 Before the circuit court, defendants moved to dismiss the plaintiff's operative complaint under section 2-619.1 of the Code of Civil Procedure (735 ILCS 5/2-619.1 (West 2020)), arguing that plaintiff's negligence claim was subject to dismissal as affirmatively barred by sovereign immunity and that plaintiff's remaining claims were legally insufficient. A motion to dismiss under section 2-

- 20 -

619.1 of the Code of Civil Procedure (*id.*) "allows a party to combine into one pleading motions to dismiss under section 2-615 [citation] and section 2-619 [citation]." *Cahokia Unit School District No. 187 v. Pritzker*, 2021 IL 126212, ¶ 23. "A motion to dismiss under section 2-615 challenges the legal sufficiency of the plaintiff's claim, while a motion to dismiss under section 2-619 admits the legal sufficiency of the claim but asserts defenses or defects outside the pleading to defeat the claim." *Id.* Under either section, the motion "admits as true all well-pleaded facts and all reasonable inferences from those facts," and the court "must construe the pleadings and supporting documents in the light most favorable to the nonmoving party." *Id.* ¶ 24. This court reviews dismissal under either section *de novo*. *Id.*

¶ 64 On cross-appeal, plaintiff does not challenge the circuit court's dismissal of his negligence, void for vagueness, proportionate penalties clause, and eighth amendment claims. In failing to argue these points on appeal, plaintiff has forfeited them. See Ill. S. Ct. R. 341(h)(7) (eff. Oct. 1, 2020) ("Points not argued are forfeited ***."). Plaintiff cross-appealed, challenging the dismissal of his remaining substantive due process, procedural due process, and *ex post facto* claims. Accordingly, we address those challenges below, accepting as true all well-pleaded facts and all reasonable inferences from those facts, including plaintiff's as-applied and facial constitutional challenges to the Residency Restriction and other sex offender provisions.

¶ 65 In his complaint, plaintiff alleged that, since his 2003 conviction, he had not reoffended and had no other criminal charges or convictions. Plaintiff alleged that he had been rehabilitated with no violations and did not possess any recidivist characteristics. Plaintiff thus argues that he has lived a lawful life for the last two decades and has long passed what is known as the "desistance threshold," where a convicted person's risk is at the same level as the general population. Plaintiff argues that recidivism rates drop steeply for individuals in their fifties and sixties so that longer periods of registration and community control are inefficient and make it difficult for the public to determine the true risk an individual offender may pose. In addition to his remaining substantive due process claims, plaintiff argues that, because he is no longer a risk to the public, the sex offender registration, notification, presence, and residency provisions violate his right to procedural due process and that any postoffense amendments to these provisions violate the

prohibition against *ex post facto* laws. We reject plaintiff's arguments and affirm the circuit court's dismissal of these claims.

¶ 66                          1. Substantive Due Process—Additional
                                    Sex Offender Restrictions

¶ 67        Plaintiff's second amended complaint challenged as a violation of substantive due process other "presence restrictions" applying to sex offenders (720 ILCS 5/11-9.3 (West 2018)), the Registration Act (730 ILCS 150/1 *et seq.* (West 2018)), the Notification Law (730 ILCS 152/101 *et seq.* (West 2018)), and section 5-5-3(*o*) of the Criminal Code (*id.* § 5-5-3(*o*)), which requires individuals convicted of sex offenses to annually renew their driver's licenses. Nevertheless, when considering the remainder of the provisions plaintiff asserts violate his fundamental rights, we maintain our conclusion that they do not implicate fundamental rights, are rationally related to the State's legitimate goal to protect children, and pass constitutional muster, both as applied and facially. See *Legoo*, 2020 IL 124965, ¶ 32; *Pepitone*, 2018 IL 122034, ¶ 14; *Cornelius*, 213 Ill. 2d at 204; *In re J.W.*, 204 Ill. 2d at 67.

¶ 68        "The Registration Act was passed by the General Assembly 'in response to concern over the proliferation of sex offenses against children.' " *Cornelius*, 213 Ill. 2d at 194 (quoting *Adams*, 144 Ill. 2d at 386). "By requiring sex offenders to register with local law enforcement agencies, 'the legislature sought to create an additional method of protection for children from the increasing incidence of sexual assault and sexual abuse.' " *Id.* (quoting *Adams*, 144 Ill. 2d at 387). "The Registration Act was designed to aid law enforcement agencies in allowing them to 'monitor the movements of the perpetrators by allowing ready access to crucial information.' " *Id.* (quoting *Adams*, 144 Ill. 2d at 388). "Similarly, the Notification Law, by disseminating the information gathered through the Registration Act, is intended to protect the public." *Id.*

¶ 69        The Registration Act requires all sex offenders, defined in section 2 of that act (730 ILCS 150/2 (West 2018)), to register in person with municipal or county law enforcement officials within three days of beginning school or establishing a residence, place of employment, or temporary domicile in that municipality or county. *Id.* § 3(a)(1), (a)(2), (b). Pursuant to the Registration Act, the sex offender

must provide accurate information that includes a current photograph, current address, current place of employment, telephone number, the employer's telephone number, school attended, all e-mail addresses, instant messaging identities, chat room identities, all uniform resource locators (URLs) registered or used by the sex offender, and all blogs and other Internet sites maintained by the sex offender or to which the sex offender has uploaded any content. *Id.* § 3(a). The sex offender must provide information regarding the terms and conditions of parole or release, the county of conviction, license plate numbers, age at time of offense, age of victim, and any distinguishing marks on the body. *Id.*

¶ 70      Pursuant to the Registration Act, a sex offender absent from his current address for three or more days shall notify the law enforcement agency of the itinerary for travel. *Id.* A sex offender who lacks a fixed residence must report weekly, in person. *Id.*

¶ 71      The Registration Act requires a sex offender to pay a $100 initial registration fee and a $100 annual renewal fee to the registering law enforcement agency, although the fee may be waived if the offender is indigent. *Id.* § 3(c)(6). The registering law enforcement agency enters the information into the Law Enforcement Agencies Data System (LEADS). *Id.* § 8.

¶ 72      A sex offender subject to the Registration Act is also subject to the provisions of the Notification Law. The Notification Law requires the ISP to establish and maintain a statewide sex offender database "for the purpose of identifying sex offenders and making that information available to the persons" identified in the Notification Law. 730 ILCS 152/115(a) (West 2018).

¶ 73      The ISP must make the information contained in the database accessible on the Internet, searchable via a mapping system that identifies registered sex offenders living within five miles of an identified address. *Id.* § 115(b). The information contained in the database must be disclosed to entities such as school boards, principals, child care facilities, libraries, public housing agencies, the Illinois Department of Children and Family Services, social service agencies, volunteer organizations providing services to minors, and a victim of a sex offense residing in the county where the sex offender is required to register or is employed. *Id.* § 120(a). The ISP, in its discretion, may also disclose the information to any person "likely to encounter a sex offender." *Id.* § 120(b). Local law enforcement

authorities must make the registry information available and "open to inspection by the public" in accordance with procedures set forth in the Notification Law. *Id.* § 120(c).

¶ 74 The Criminal Code includes additional prohibitions for child sex offenders. For example, the Criminal Code prohibits a child sex offender's presence within a school zone and prohibits a child sex offender from approaching, contacting, residing with, or communicating with a child within certain places. 720 ILCS 5/11-9.3 (West 2018). The Criminal Code prohibits a child sex offender from knowingly being present in "any school building, on real property comprising any school, or in any conveyance owned, leased, or contracted by a school to transport students to or from school or a school related activity" when children are present, unless he is attending a conference at a school concerning his own child. *Id.* § 11-9.3(a). The Criminal Code prohibits a child sex offender from knowingly being present "within 100 feet of a site posted as a pick-up or discharge stop for a conveyance owned, leased, or contracted by a school to transport students to or from school or a school or school related activity" when children are present. *Id.* § 11-9.3(a-5). In addition to the Residency Restriction here, the Criminal Code further prohibits a child sex offender from knowingly residing "within 500 feet of a school building or the real property comprising any school" that children attend (*id.* § 11-9.3(b-5)) or "within 500 feet of a playground, child care institution, day care center, part day child care facility, *** group day care home, or a facility providing programs or services exclusively directed toward" children (*id.* § 11-9.3(b-10)).

¶ 75 This court has held that a sex offender does not have a cognizable privacy interest in his sex offender registry information and, thus, the provisions of the Registration Act and Notification Law, allowing extensive transmission of this information, including a sex offender's photograph and physical attributes via the Internet, do not implicate the expanded privacy protections afforded by the Illinois Constitution. *Cornelius*, 213 Ill. 2d at 197. This court in *Cornelius* concluded that, because no fundamental right was implicated by the Internet provisions of the Notification Act, strict scrutiny analysis did not apply and the Internet dissemination of the sex offender's data was rationally related to the legislature's purpose to assist law enforcement and protect the public. *Id.* at 204-05; see also *In re J.W.*, 204 Ill. 2d at 67 (rejecting substantive due process challenge to the Registration Act by holding that the Registration Act's provisions do not affect

fundamental rights and instead pass constitutional muster under rational basis review); *Adams*, 144 Ill. 2d at 390 (holding that the Registration Act's registration requirements are reasonable and rationally related to the interest of protecting children).

¶ 76 Moreover, this court has held that the presence restriction found in section 11-9.4-1(b) (720 ILCS 5/11-9.4-1(b) (West 2018)), making it unlawful for a child sex offender to knowingly be present in any public park building or on real property comprising a public park, does not affect a fundamental right and is rationally related to the legislative goal of protecting children from sex offenders. *Pepitone*, 2018 IL 122034, ¶ 31 (by keeping child sex offenders away from children, legislature rationally sought to avoid giving offenders opportunity to reoffend). Likewise, continued use and possession of a driver's license "is not fundamental in the constitutional sense" (*People v. Lindner*, 127 Ill. 2d 174, 179 (1989)), and requiring plaintiff to renew his driver's license annually (730 ILCS 5/5-5-3(*o*) (West 2018)) is rationally related to the legitimate state interest to assist law enforcement in protecting the public. See *People v. Pollard*, 2016 IL App (5th) 130514, ¶ 37.

¶ 77 In briefing before this court, plaintiff argues that, although the statutory text prohibiting his presence near schools (720 ILCS 5/11-9.3(a) (West 2018)) is neutral, applying to all sex offenders regardless of their religion, it denies him his first amendment right to free exercise of religion because he is Catholic, some Catholic churches have elementary schools on their grounds, and, therefore, he is prohibited from attending church. See *Church of Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 531 (1993) ("In addressing the constitutional protection for free exercise of religion, our cases establish the general proposition that a law that is neutral and of general applicability need not be justified by a compelling governmental interest even if the law has the incidental effect of burdening a particular religious practice."). However, plaintiff did not include this allegation in his second amended complaint, and he cannot raise it for the first time on appeal. See *Haudrich v. Howmedica, Inc.*, 169 Ill. 2d 525, 536 (1996) ("It is well settled that issues not raised in the trial court *** may not be raised for the first time on appeal."). Likewise, although plaintiff argues on appeal that requiring him to notify law enforcement if he is temporarily absent from his current address for three or more days violates his fundamental right to travel, plaintiff asserted in his second

amended complaint only that the "residency restrictions" interfered with his right to intrastate travel. See 730 ILCS 150/3(a) (West 2018). He has therefore forfeited this argument as well.

¶ 78　　　　Plaintiff also argues that his fundamental liberty interest in raising and caring for his children is being infringed through the additional provisions preventing him from, *inter alia*, attending his children's school activities or taking his children to tutoring services or any pediatric medical or dental professional. See 720 ILCS 5/11-9.3(a), (b-2), (c) (West 2018). Plaintiff asks that we overrule our previous decision in *Legoo*, 2020 IL 124965, wherein we rejected a similar challenge. We decline plaintiff's request.

¶ 79　　　　In *Legoo*, 2020 IL 124965, ¶ 1, the defendant was convicted of a misdemeanor of being a child sex offender in a public park. The defendant testified that his fiancée was out of town, no one else was available to retrieve his son from the park that night, and he spent less than five minutes in the park. *Id.* ¶ 6. Accordingly, the defendant argued that the provision of the Criminal Code prohibiting his presence in a public park (720 ILCS 5/11-9.4(b) (West 2016)) deprived parents who have been convicted of child sex offenses of their constitutional right to the society of their children and, as applied, violated his fundamental right to be present with his child. *Legoo*, 2020 IL 124965, ¶ 28. This court rejected the defendant's argument, holding that, because defendant did not have a fundamental liberty interest to be present in a park, it follows that he did not have a fundamental right to take his child to a park either. *Id.* ¶ 32. This court held that, even if the defendant had no one available to help retrieve his son from the park, he could have called the police department for assistance rather than entering the park himself in violation of Illinois law. *Id.* ¶ 34. Thus, this court concluded that the prohibition as written did not interfere with defendant's fundamental liberty interest in raising and caring for his child. *Id.* ¶ 35.

¶ 80　　　　Plaintiff asserts no compelling reason to depart from our holdings that the provisions at issue pass constitutional muster. Accordingly, we affirm the circuit court's dismissal of plaintiff's alternative as-applied and facial constitutional claims that asserted these additional restrictions violated his substantive due process rights.

¶ 81                              2. Procedural Due Process

¶ 82          Plaintiff included procedural due process claims in count II of his second
      amended complaint. "Procedural due process claims challenge the constitutionality
      of the specific procedures used to deny a person's life, liberty, or property."
      *Cardona*, 2013 IL 114076, ¶ 15. "The fundamental requirements of due process are
      notice of the proceeding and an opportunity to present any objections." *Id.* "Due
      process is a flexible concept, and ' "not all situations calling for procedural
      safeguards call for the same kind of procedure." ' " *People ex rel. Birkett v.
      Konetski*, 233 Ill. 2d 185, 201 (2009) (quoting *Lyon v. Department of Children &
      Family Services*, 209 Ill. 2d 264, 272 (2004), quoting *Morrissey v. Brewer*, 408
      U.S. 471, 481 (1972)).

¶ 83          "When a fundamental right or suspect classification based upon race or national
      origin is involved, strict scrutiny analysis applies" to a procedural due process
      claim. *In re M.A.*, 2015 IL 118049, ¶ 36. "When a fundamental right or suspect
      classification is not involved, the rational basis standard applies." *Id.* This court has
      found "no compelling reason to interpret the Illinois due process clause to provide
      greater protection than its federal counterpart." *Id.* ¶ 38.

¶ 84          Plaintiff argues that the Residency Restriction and the other specified
      provisions applicable to sex offenders amount to a violation of his procedural due
      process rights because they are based on an "irrebuttable presumption" that he
      remains a grave danger to society. See *People v. Pomykala*, 203 Ill. 2d 198 (2003)
      (jury instruction on reckless homicide statute that created an unconstitutional
      mandatory presumption of recklessness violated defendant's due process rights).
      As noted by defendants, plaintiff conflates the policy reason behind the sex offender
      provisions with a legally binding presumption applicable in a judicial proceeding.
      See *People v. Woodrum*, 223 Ill. 2d 286, 308 (2006) (mandatory presumption
      requiring factfinder in judicial proceeding to presume existence of an element of an
      offense is unconstitutional because it conflicts with the presumption of innocence).
      Nevertheless, plaintiff devotes much of his argument on appeal disputing this
      "irrebuttable presumption," arguing that, because there is no process for judicial
      review to measure individual risk of recidivism for the continued imposition of the

statutory scheme, the sex offender registration, notification, presence, and residency provisions violate his right to procedural due process. Plaintiff argues that he is denied procedural due process of law absent the opportunity to rebut the presumption that he will reoffend.

¶ 85     In response to plaintiff's argument, we find persuasive the analysis of the Appellate Court, First District, in *People v. Avila-Briones*, 2015 IL App (1st) 132221. In *Avila-Briones*, the appellate court was asked to revisit the constitutionality of the Registration Act (730 ILCS 150/1 *et seq.* (West 2012)), the Notification Law (730 ILCS 152/101 *et seq.* (West 2012)), and other statutes applicable to sex offenders, including residency, employment, and presence restrictions. *Avila-Briones*, 2015 IL App (1st) 132221, ¶ 1. The *Avila-Briones* court rejected the sex offender defendant's contention that these provisions violated substantive due process, finding they did not affect fundamental rights enshrined in the substantive due process clause and were rationally related to the goal of protecting the public from the possibility that sex offenders will commit new crimes. *Id.* ¶ 2. The *Avila-Briones* court also held that the defendant was not entitled to additional procedures to evaluate his risk of reoffending where his risk of reoffending was irrelevant to his status as a sex offender under Illinois law. *Id.*

¶ 86     The court in *Avila-Briones* cited the United States Supreme Court's decision in *Connecticut Department of Public Safety v. Doe*, 538 U.S. 1 (2003), wherein the United States Supreme Court addressed a similar due process challenge to the provisions of Connecticut's sex offender registry law requiring the posting of sex offender registry information on the Internet, thereby making the registry available to the public. The convicted sex offender in that case argued that Connecticut's registration law violated his right to due process because he was not a dangerous sexual offender and, thus, the law deprived him of a liberty interest—his reputation combined with alteration of his status under state law—without notice or a meaningful opportunity to be heard. *Id.* at 6. The Supreme Court held that a party asserting a right to a hearing under the due process clause must show that the facts the party seeks to establish in that hearing are relevant under the statutory scheme. *Id.* at 8.

¶ 87     The Supreme Court held that because Connecticut's sex-offender registration system turned on an offender's conviction alone—"a fact that a convicted offender

has already had a procedurally safeguarded opportunity to contest"—Connecticut was not required to hold a hearing regarding current dangerousness before requiring registration. *Id.* at 7. Because only the conviction was relevant to the disclosure of the registrants' information, the Supreme Court held that a hearing on current dangerousness would be a "bootless exercise" because current dangerousness was "of no consequence." *Id.* at 7-8. Accordingly, the Supreme Court held due process did not entitle the registrants to a hearing to prove an element that had no relevance to their registration or a fact that was not material under the Connecticut statute. *Id.* at 7.

¶ 88    Noting that Illinois's system, like Connecticut's, is based entirely on the offense for which a sex offender has been convicted, the First District likewise held in *Avila-Briones* that a sex offender's likelihood to reoffend was not relevant to the assessment. Accordingly, the court held that the defendant had no right to a procedure to prove a fact that had no relevance to his registration. *Avila-Briones*, 2015 IL App (1st) 132221, ¶ 92.

¶ 89    We agree with this analysis. Plaintiff is prohibited from residing within 500 feet of a day care home by virtue of his conviction. See 720 ILCS 5/11-9.3(b-10) (West 2018) (prohibiting child sex offender from residing within 500 feet of day care home); *id.* § 11-9.3(d)(1)(A) (defining "child sex offender" as any person who has been "charged under Illinois law *** with a sex offense" and is "convicted of such offense"). Likewise, he is subject to registration, notification, presence, and other residency restrictions by virtue of his conviction alone. See *id.* § 11-9.3; 730 ILCS 150/1 *et seq.* (West 2018); 730 ILCS 152/101 *et seq.* (West 2018); see also 730 ILCS 5/5-5-3(*o*) (West 2018)). Plaintiff's dangerousness or likelihood to reoffend is irrelevant to his subjection to these provisions, which are triggered based on his conviction. Accordingly, plaintiff does not have a due process right to a hearing to establish a fact that is not relevant or material under Illinois law. See *In re M.A.*, 2015 IL 118049, ¶¶ 47-48 (like the Connecticut statute, Violent Offender Act requires violent offenders against youth to register based on fact of adjudication or conviction; current dangerousness is not relevant or material to the duty to register under the Violent Offender Act, and thus, registrant does not have a due process right to a hearing to establish a fact that is not relevant or material under Illinois law).

¶ 90 Plaintiff suggests that the provisions at issue may be overinclusive, imposing burdens on sex offenders like himself who pose no threat to the public because they will not reoffend. However, as noted herein, the provisions have a rational relationship to protecting the public. The Registration Act, the Notification Law, and the annual driver's license requirements help law enforcement track sex offenders for purposes of public safety (*Cornelius*, 213 Ill. 2d at 205; *In re J.W.*, 204 Ill. 2d at 67-68), and the presence and residency restrictions keep sex offenders away from areas where children congregate (*e.g.*, school property, day care homes, and playgrounds) to avoid giving offenders the opportunity to reoffend. Whether or not these provisions are "finely tuned response[s] to the threat of sex offender recidivism is not a question for rational basis review; that is a question for the legislature." See *Avila-Briones*, 2015 IL App (1st) 132221, ¶ 84.

¶ 91 Accordingly, plaintiff has failed to sufficiently allege a violation of procedural due process as applied to him, and it follows that he has failed to allege facial unconstitutionality on this basis. See *In re M.A.*, 2015 IL 118049, ¶ 49. Thus, the circuit court properly dismissed this claim as well.

¶ 92                              3. *Ex Post Facto* Claims

¶ 93 Plaintiff also argues that the registration, notification, presence, and residency restrictions violate the *ex post facto* clauses of the Illinois and United States Constitutions. Ill. Const. 1970, art. I, § 16; U.S. Const., art. I, §§ 9, 10. Plaintiff argues that since he pleaded guilty to his crime, the statutory scheme has been amended to include more burdensome requirements and constraints and that these provisions are retroactive in nature and constitute punishment in violation of the *ex post facto* constitutional provisions. Defendants counter that the circuit court properly dismissed plaintiff's *ex post facto* claim because the amendments to the registration, notification, presence, and residency provisions do not impose punishment on plaintiff. We agree with defendants.

¶ 94 Retroactive application of a law that inflicts greater punishment than did the law that was in effect when the crime was committed is forbidden by the *ex post facto* clauses of the United States Constitution and Illinois Constitution. See U.S. Const., art. I, §§ 9, 10; Ill. Const. 1970, art. I, § 16. "The *ex post facto* provisions restrain a legislative body from enacting arbitrary or vindictive

- 30 -

legislation, and assure[ ] that statutes provide fair warning of their effect." *Cornelius*, 213 Ill. 2d at 207. "A law is considered *ex post facto* if it is both retroactive and disadvantageous to the defendant." *Id.* A law is retroactive if it applies to events that occurred before the law was enacted. *Lynce v. Mathis*, 519 U.S. 433, 441 (1997). "A defendant is disadvantaged by a law if that law criminalizes an act that was innocent when performed, increases the punishment for a previously committed offense, or alters the rules of evidence by making a conviction easier." *Cornelius*, 213 Ill. 2d at 207.

¶ 95    "Our court 'has long interpreted our own [*ex post facto*] provision in step with Supreme Court pronouncements.' " *Id.* (quoting *Barger v. Peters*, 163 Ill. 2d 357, 360 (1994)). "Accordingly, the Illinois *ex post facto* clause does not provide any greater protection than that offered by the United States Constitution." *Id.* "This court, in interpreting the *ex post facto* prohibition in the Illinois Constitution, looks to the United States Supreme Court's interpretation of the federal prohibition." *Fletcher v. Williams*, 179 Ill. 2d 225, 229 (1997).

¶ 96    In his second amended complaint, plaintiff asserted that the Registration Act and the Notification Law violate the prohibition against *ex post facto* laws. However, the Registration Act and the Notification Law were in effect when plaintiff committed aggravated sexual abuse against a minor in 2002 (see 730 ILCS 150/1 *et seq.* (West 2002); 730 ILCS 152/101 *et seq.* (2002)), and thus, many of their provisions are not being applied retroactively in violation of the prohibition against *ex post facto* laws. At the time of plaintiff's offense, the Criminal Code included presence and residency restrictions. See 720 ILCS 5/11-9.3(a) (West 2002) (prohibiting presence in school building); *id.* § 11-9.3(b-5) (prohibiting residing within 500 feet of a school building); see also *id.* § 11-9.4(a) (prohibiting presence in public park building or on real property comprising public park when children are present and approaching child unless offender is a parent); *id.* § 11-9.4(b-5) (prohibiting residing within 500 feet of "a playground or a facility providing programs or services exclusively directed" toward children); (*id.* § 11-9.4(c) (prohibiting knowing association or presence "at any facility providing programs or services exclusively directed towards" children).

¶ 97    At the time of plaintiff's offense, the Registration Act provided that a sex offender, within 10 days of beginning school or reestablishing a residence,

placement of employment, or temporary domicile, register in person with a municipality or county sheriff, providing his current address, current place of employment, school attended (730 ILCS 150/3 (West 2002)), and photograph (*id.* § 8). The sex offender was required to pay a $10 initial registration fee and a $5 annual renewal fee. *Id.* § 3(c)(6).

¶ 98    At that time, like the current law, the Notification Law provided that the ISP establish and maintain a statewide database created from LEADS, making the information contained accessible on the Internet. 730 ILCS 152/115 (West 2002). Law enforcement was required to disclose the sex offender information to the boards of institutions of higher education, school boards, principals, and childcare facilities. *Id.* § 120.

¶ 99    On appeal, plaintiff references "ever increasing requirements" that amount to retroactive punishment in violation of the *ex post facto* clauses but fails to specify how the subsequently added or amended provisions amount to retroactive punishment against him in light of established law. See Ill. S. Ct. R. 341(h)(7) (eff. Oct. 1, 2020) ("Points not argued are forfeited ***."); see also *People ex rel. Illinois Department of Labor v. E.R.H. Enterprises*, 2013 IL 115106, ¶ 56 ("a reviewing court is not simply a depository into which a party may dump the burden of argument and research"). Nonetheless, in his complaint, plaintiff alleged as punishment the Residency Restriction (720 ILCS 5/11-9.3(b-10) (West 2018)) and the amendments barring him from all parks, forest preserves, and conservation areas at all times even if he has a child there (*id.* § 11-9.4-1); increasing his yearly sex offender registration fee from $10 to $100, although the fee may be waived if the offender is indigent (730 ILCS 150/3(c)(6) (West 2018)); increasing the amount of information he must provide to law enforcement to include all e-mail addresses, Internet messaging identities, chat room identities, all URLS, and all blogs and Internet sites (*id.* § 3(a)); reducing the amount of time to register with law enforcement officials from 10 days to 3 days (*id.* § 3(a)(1), (a)(2), (b)); and requiring him to renew his driver's license annually (730 ILCS 5/5-5-3(*o*) (West 2018)).

¶ 100    To consider whether these amended sex offender registration, notification, presence, and residency provisions constitute retroactive punishment forbidden by the prohibition against *ex post facto* laws, the Supreme Court directed that we must

" 'ascertain whether the legislature meant the statute to establish "civil" proceedings.' " *Smith v. Doe*, 538 U.S. 84, 92 (2003) (quoting *Kansas v. Hendricks*, 521 U.S. 346, 361 (1997)). If the legislature intended to impose punishment, that ends the inquiry. *Id.* However, if the legislature intended to enact a regulatory scheme that is civil and nonpunitive, we must examine whether the scheme is so punitive in purpose or effect that the State's intention to deem it civil is negated. *Id.*

¶ 101 In *Smith*, the United States Supreme Court addressed whether Alaska's Internet sex offender registration statute was an impermissible *ex post facto* statute. Guided by relevant factors noted in *Kennedy v. Mendoza-Martinez*, 372 U.S. 144, 168-69 (1963) (whether regulatory scheme has been regarded in history as punishment, imposes affirmative disability or restraint, promotes traditional aims of punishment, has rational connection to nonpunitive purpose, or is excessive with respect to its purpose), the Supreme Court rejected arguments that Alaska's sex offender registration and notification provisions, most particularly the Internet notification provisions, resembled shaming punishments of the colonial period. *Smith*, 538 U.S. at 98 (even punishments that lacked corporal component, such as public shaming, involved more than the dissemination of information because they either involved face-to-face shaming or expulsion from the community). The Supreme Court explained that in contrast to traditional "shaming" punishments that subjected individuals to public ridicule, a sex offender's stigma results from dissemination of truthful information about his criminal record, most of which is already available to the public. *Id.* The Supreme Court held that Alaska's statutory scheme also did not subject sex offenders to an affirmative disability or restraint because they remained free to change jobs or residences. *Id.* at 100.

¶ 102 In *Smith*, the Supreme Court further held that Alaska's statutory scheme did not promote traditional aims of punishment but instead maintained a rational connection to a legitimate nonpunitive purpose of public safety, which was advanced by notifying the public of the presence of sex offenders in their community. *Id.* at 102-03 ("A statute is not deemed punitive simply because it lacks a close or perfect fit with the nonpunitive aims it seeks to advance."). The Supreme Court held that a statute's rational connection to a nonpunitive purpose is a " '[m]ost significant' " factor in the determination of whether the statute's effects are punitive. *Id.* at 102 (quoting *United States v. Ursery*, 518 U.S. 267, 290 (1996)). The Supreme Court also held that Alaska's regulatory scheme was not excessive

with respect to its purpose, noting that "[t]he *Ex Post Facto* Clause does not preclude a State from making reasonable categorical judgments that conviction of specified crimes should entail particular regulatory consequences." *Id.* at 103-04 (state's determination to legislate with respect to convicted sex offenders as a class, rather than require individual determination of their dangerousness, does not make the statute a punishment under the *ex post facto* clause).

¶ 103   In rejecting the argument that posting sex offender registry information on the Internet constituted punishment, the United States Supreme Court stated:

"Our system does not treat dissemination of truthful information in furtherance of a legitimate governmental objective as punishment. On the contrary, our criminal law tradition insists on public indictment, public trial, and public imposition of sentence. Transparency is essential to maintaining public respect for the criminal justice system, ensuring its integrity, and protecting the rights of the accused. The publicity may cause adverse consequences for the convicted defendant, running from mild personal embarrassment to social ostracism. *** [H]owever, the State does not make the publicity and the resulting stigma an integral part of the object of the regulatory scheme.

The fact that Alaska posts the information on the Internet does not alter our conclusion. It must be acknowledged that notice of a criminal conviction subjects the offender to public shame, the humiliation increasing in proportion to the extent of the publicity. And the geographic reach of the Internet is greater than anything that could have been designed in colonial times. These facts do not render Internet notification punitive. The purpose and the principal effect of notification are to inform the public for its own safety, not to humiliate the offender. Widespread public access is necessary for the efficacy of the scheme, and the attendant humiliation is but a collateral consequence of a valid regulation." *Id.* at 98-99.

¶ 104   When faced with a challenge by a sex offender first subject to registration under an initial version of the Registration Act applied retroactively to him, this court held that, because the Registration Act and Notification Law do not amount to punishment, their provisions do not violate the constitutional prohibitions against *ex post facto* laws. *People v. Malchow*, 193 Ill. 2d 413, 418-24 (2000). Thereafter, informed by the analysis of the Supreme Court in *Smith*, this court also concluded

that allowing information gathered pursuant to the Registration Act and Notification Law to be disclosed to a wider public via the Internet does not violate the constitutional prohibitions against *ex post facto* laws. *Cornelius*, 213 Ill. 2d at 208-09 (Illinois registration provisions are similar to those of the Alaska act). Subsequently, this court reiterated that the Registration Act's requirements do not constitute punishment and, thus, an increase in the length of a minor's registration term to lifetime does not convert a nonpunitive regulatory measure into punishment in violation of the constitutional prohibitions against *ex post facto* laws. *Konetski*, 233 Ill. 2d at 210; see also *In re J.W.*, 204 Ill. 2d at 73-76 (the Registration Act and the Notification Law deemed not punishment as applied to juvenile classified as sexual predator); *Adams*, 144 Ill. 2d at 386-90 (requiring sex offenders to register is not punishment).

¶ 105    Guided by this precedent, we reject plaintiff's arguments that the Registration Act and Notification Law are punitive in nature or that the in-person reporting requirements amount to direct restraint. See *Malchow*, 193 Ill. 2d at 421 (notification law places no affirmative disability or restraint on sex offenders where their movements and activities are not restricted in any way); *Adams*, 144 Ill. 2d at 387 (duty to register imposes no restraints on liberty or property and is not punishment). Moreover, with regard to plaintiff's *ex post facto* claims involving the Residency Restriction, we find persuasive the federal court's analysis in *Vasquez* finding the Illinois provisions prohibiting child sex offenders from living within 500 feet of child day care homes and group day care homes (720 ILCS 5/11-9.3(b-5), (b-10) (West 2016)) nonpunitive. *Vasquez*, 895 F.3d 515, *overturned on other grounds by Koch*, 43 F.4th at 756 (overturning *Vasquez*'s ruling governing retroactivity inquiry of *ex post facto* analysis).

¶ 106    Similar to the plaintiff here, when the sex offenders in *Vasquez* updated their registrations, the Illinois statute had been amended to add child day care homes and group day care homes to the list of places included in the 500-foot residential buffer zone (see 720 ILCS 5/11-9.3(b-10) (West 2016)). *Vasquez*, 895 F.3d at 517. In *Vasquez*, the child sex offenders were told they had to move within 30 days. *Id.* They alleged that they were unable to find suitable and affordable housing, that their children's school would be disrupted if they were required to move outside the school district, and that they could not afford to move into compliant housing. *Id.* at 518-19.

¶ 107     The Seventh Circuit Court of Appeals rejected their *ex post facto* challenge, concluding that the Illinois residency statute was similar to the sex-offender registration statute in *Smith* and was likewise a nonpunitive civil regulatory scheme. *Id.* at 521. The *Vasquez* court concluded that the Residency Restriction did not shame child sex offenders to inflict public disgrace or to chase them out of the community and that it did not resemble banishment. *Id.* The *Vasquez* court held that the Residency Restriction "merely keeps child sex offenders from living in very close proximity to places where children are likely to congregate; it does not force them to leave their communities." *Id.* The *Vasquez* court, following *Smith*, further concluded that the Residency Restriction could not be compared to probation or supervised release, noting that offenders remain free to move where they wish and to live and work as other citizens with no supervision. *Id.*; see also *Smith*, 538 U.S. at 101.

¶ 108     Noting that a child sex offender may have difficulty finding suitable compliant housing in his neighborhood and that including child day care homes within a 500-foot buffer zone creates some unpredictability because a private residential property can become a day care home without anyone in the neighborhood noticing, the *Vasquez* court nevertheless held that the Residency Restriction imposes no physical restraint and does not resemble the punishment of imprisonment, which is the " 'paradigmatic affirmative disability or restraint.' " *Vasquez*, 895 F.3d at 522 (quoting *Smith*, 538 U.S. at 100). The *Vasquez* court further concluded that the Residency Restriction is clearly not retributive and that the aim of the statute is to protect children from the danger of recidivism by convicted child sex offenders. *Id.* (citing *Smith*, 538 U.S. at 102).

¶ 109     The *Vasquez* court explained that, even if it accepted as true the assertion that sex offenders do not reoffend more than other criminals, "similar recidivism rates across different categories of crime would not establish that the nonpunitive aim of this statute—protecting children—is a sham." *Id.* The *Vasquez* court concluded that the Residency Restriction raised no *ex post facto* concerns. *Id.*

¶ 110     We agree with this analysis. The Residency Restriction does not resemble the historical punishment of banishment, does not resemble imprisonment, is not intended as retribution, bears a reasonable relationship to the rational nonpunitive purpose of keeping children safe from child predators, promotes a reasonable

method of accomplishing that goal, and is not excessive to its purpose. See also *People v. Morgan*, 377 Ill. App. 3d 821 (2007) (residency restricting prohibiting child sex offender from residing within 500 feet of a school building that children attended did not constitute an impermissible *ex post facto* law, even though statute punished defendant for the original sex offense that occurred before the enactment of the statute); *Leroy*, 357 Ill. App. 3d at 539-40 (residency restriction restricting child sex offenders from residing within 500 feet of a playground or a facility providing programs or services exclusively directed toward children was not so punitive that it negated the state's attempt to craft civil restrictions and, thus, did not constitute an unconstitutional *ex post facto* law).

¶ 111    Plaintiff requests this court to reapply the *Mendoza-Martinez* framework to the amended statutory scheme applying to sex offenders. However, this court and the United States Supreme Court have considered similar provisions and concluded that they do not inflict punishment. *Smith*, 538 U.S. at 97-103; *Cornelius*, 213 Ill. 2d at 208-09. Sex offender registration is a regulatory scheme designed to foster public safety (see *Cardona*, 2013 IL 114076, ¶ 24 ("sex offender registration is not punishment")), and the presence and residency restrictions are designed to do the same by keeping congregating children safe from reoffending sex offenders. Plaintiff asserts no compelling reason why the amendments at issue change the analysis or warrant application of these factors anew.

¶ 112    Plaintiff argues that the more restrictive provisions promote the traditional aims of punishment because they promote general deterrence through the threat of negative consequences, *i.e.*, living restrictions, presence restrictions, travel restrictions, loss of privacy, and humiliation. However, "[a]ny number of governmental programs might deter crime without imposing punishment." *Smith*, 538 U.S. at 102. To hold that the presence of a deterrent purpose renders a restriction punishment " 'would severely undermine the [g]overnment's ability to engage in effective regulation.' " *Id.* (quoting *Hudson v. United States*, 522 U.S. 93, 105 (1997)). Instead, the statutory scheme involving sex offenders and child sex offenders has a nonpunitive purpose of public safety, which is advanced by alerting the public to the risk of sex offenders in their community and creating a buffer between sex offenders and congregations of children. Accordingly, plaintiff has failed to sufficiently allege an as-applied or facial violation of the *ex post facto* provisions of the federal and state constitutions. See *In re M.A.*, 2015 IL 118049,

¶ 49.

¶ 113                                    III. CONCLUSION

¶ 114        In sum, we vacate the portion of the circuit court's orders entering a permanent injunction on the basis that the Residency Restriction was unconstitutional as applied to plaintiff. We find that the circuit court prematurely held the Residency Restriction unconstitutional as applied to plaintiff, considering it had no evidence before it to do so. We therefore remand the cause to the circuit court to hear evidence on plaintiff's as-applied constitutional allegations and to conduct further proceedings consistent with this opinion.

¶ 115        We hereby reverse the portion of the circuit court's orders finding the Residency Restriction facially unconstitutional and granting plaintiff permanent injunctive relief on this basis.

¶ 116        We affirm the portion of the circuit court's orders dismissing plaintiff's remaining claims.

¶ 117        Circuit court judgment affirmed in part, reversed in part, and vacated in part.

¶ 118        Cause remanded.

¶ 119        JUSTICE NEVILLE took no part in the consideration or decision of this case.